# TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY *v.* INDIANA *ex rel.* KETCHAM.

ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 264.  Argued April 29, May 2, 1904.—Decided May 31, 1904.

Where the state court has sustained a result which cannot be reached except on what this court deems a wrong construction of the charter without relying on unconstitutional legislation this court cannot decline jurisdiction on writ of error because the state court apparently relied more on the untenable construction than on the unconstitutional statute.

A provision in a charter of a railroad company that the legislature *may* so regulate tolls that not more than a certain percentage be divided as profits to the stockholders and the surplus shall be paid over to the state treasurer for the use of schools, *held*, in this case to be permissive and not mandatory and that until the State acted or made a demand the railroad company could act as it saw fit as to its entire earnings.

When, therefore, the company surrendered its original charter and accepted a new one without any such provision and there had up to that time been no attempt on the part of the State to regulate tolls nor any demand made for surplus earnings the company was free from liability under the original charter, and subsequent legislation attempting to amend its charter or the general railroad law would not affect its rights.

THE facts are stated in the opinion of the court.

*Mr. Lawrence Maxwell, Jr.*, and *Mr. John G. Williams*, with whom *Mr. Samuel O. Pickens* was on the brief, for plaintiff in error:

The State, having accepted an unconditional surrender of the company's original charter, could not thereafter impose an obligation upon the company by virtue of power contained in the surrendered charter. The surrender was equivalent to the repeal of the charter with the consent of the company. The repeal of a statute takes away all powers which depend upon the statute, that have not been exercised and are not reserved. *Surtees* v. *Ellison*, 9 B. & C. 750; *Moor* v. *Seaton*, 31 Indiana, 11; *Kay* v. *Goodwin*, 6 Bing. 576, 582; *Miller's Case*, 1 W. Bl. 451; *Yeaton* v. *United States*, 5 Cranch, 281; *Schooner Rachel* v. *United States*, 6 Cranch, 329; *Ex parte McCardle*, 7 Wall. 506, 514; *Railroad Co.* v. *Grant*, 98 U. S. 398, 401; *Gurnee* v. *Patrick County*, 137 U. S. 141; *In re Hall*, 167 U. S. 38; *Bank of Hamilton* v. *Dudley's Lessee*, 2 Pet. 492; *Clapp* v. *Mason*, 94 U. S. 589; *Mason* v. *Sargent*, 104 U. S. 689; *Sturges* v. *United States*, 117 U. S. 363; *Steamship Co.* v. *Joliffe*, 2 Wall. 450; *Aspinwall* v. *Commissioners*, 22 How. 364; *Baltimore &c. S. R. R. Co.* v. *Nesbit*, 10 How. 395; *Lamb* v. *Schottler*, 54 California, 319, 323; *Terry* v. *Dale*, 27 Tex. Civ. App. 1; *Cushman* v. *Hale*, 68 Vermont, 444; *Van Inwagen* v. *Chicago*, 61 Illinois, 31; *Curran* v. *Owens*, 15 W. Va. 208; *Dillon* v. *Linder*, 36 Wisconsin, 344; *Bennett* v. *Hargus*, 1 Nebraska, 419; *Kertschacke* v. *Ludwig*, 28 Wisconsin, 430; *Rood* v. *C. M. & St. P. Ry. Co.*, 43 Wisconsin, 146; Sutherland Stat. Cons. §§ 162, 163; 26 Am. & Eng. Ency. of Law (2d ed.), 745, 747, 752; Endlich, Interp. Stats. §§ 478, 480; Hardcastle, Stat. Law (3d ed.), 374.

The judgment of the Superior Court of Marion County in 1876 created a vested right which it was not within the power of the legislature to impair. *McCullough* v. *Virginia*, 172 U. S. 102, 123; *Memphis* v. *United States*, 97 U. S. 293; *Atkinson* v. *Dunlap*, 50 Maine, 111, 115; *Davis* v. *Menasha*, 21 Wisconsin, 497, 502; *Lancaster* v. *Barr*, 25 Wisconsin, 560;

*Beaupre* v. *Hoerr*, 13 Minnesota, 366; *Germania Savings Bank* v. *Suspension Bridge*, 159 N. Y. 362, 368; *Gompf* v. *Wolfinger*, 67 Ohio St. 144, 152; *McCabe* v. *Emerson*, 18 Pa. St. 111; *Griffin's Executors* v. *Cunningham*, 20 Grat. 31; *Wieland* v. *Schillock*, 24 Minnesota, 345; *Dorsey* v. *Dorsey*, 37 Maryland, 64, 74.

The legislation of 1897 does not provide a remedy for a preëxisting cause of action, but creates a new cause of action. *Commissioners* v. *Rosche Bros.*, 50 Ohio St. 103, 112.

If the company was indebted to the State prior to 1897, there was ample authority for a suit to collect the debt. *State ex rel.* v. *Denny*, 67 Indiana, 148, 159; *Carr* v. *State ex rel.*, 81 Indiana, 342; *Board* v. *State*, 92 Indiana, 353; *United States* v. *San Jacinto Tin Co.*, 125 U. S. 273, 278.

The opinion of the Supreme Court of Indiana concedes that there was no cause of action in 1875, and that the present suit could not be maintained but for the legislation of 1897.

The effect given to the legislation of 1897 by the judgment under review is to destroy the vested right of the company under the judgment of 1876 in its favor, and to impair the obligation of the contract of surrender of 1873.

In determining whether the legislation of 1897 impairs the obligation of prior contracts between the company and the State, or destroys its vested rights, this court will construe the contracts for itself, and will determine the effect thereon of the subsequent legislation. *Mobile & Ohio R. R.* v. *Tennessee*, 153 U. S. 486, 492; *McCullough* v. *Virginia*, 172 U. S. 102, 109; *Wilson* v. *Standefer*, 184 U. S. 399, 411; *Yazoo & Miss. R. R.* v. *Adams*, 180 U. S. 41; *Citizens' Bank* v. *Parker*, 192 U. S. 73, 85.

The statutes of 1897 are all repugnant to the Constitution of the United States. The act of January 27, without constitutional right and in pursuance of the authority of a charter which had been surrendered twenty-four years before, required the company to account to the State for its earnings and private property commencing fifty years back. The act of Febru-

ary 18 declared the contract of surrender made twenty-four
years before to be inoperative. · The act of February 24 under-
took to amend the charter, which never was subject to amend-
ment and which, moreover, had been surrendered twenty-
four years before, by imposing new and different obligations
and declaring that the liability of the company should "be
the same as though this amendment had been originally a
part of the charter of said railroad and as though a suit to
enforce such accounting had been prosecuted prior to the
acceptance by said railroad company of the general railroad
law of the State." The act of March 4 appropriated the com-
pany's private property to the use of the State and directed
the Attorney General to sue for its recovery.

The company never was liable to account to the State for
surplus earnings, in the absence of legislation regulating its
tolls. This was the thing adjudged by the Superior Court of
Marion County in 1876. The adjudication of a question of
law, such as the construction of a contract, is as binding as
the adjudication of an issue of fact. *Tioga Railroad* v. *Bloss-
burg &c. Railroad,* 20 Wall. 137; *New Orleans* v. *Citizens' Bank,*
167 U. S. 371, 396; *Birckhead* v. *Brown,* 5 Sandf. 134, 149.

What was adjudged in 1876 may be shown by parol proof,
and is established by the opinion of the Superior Court of
Marion County in sustaining the demurrer to the complaint:
*Russell* v. *Place,* 94 U. S. 606; *Washington Gas Co.* v. *District*
*of Columbia,* 161 U. S. 316, 329; *Miles* v. *Caldwell,* 2 Wall. 35,
42; *Bottorff* v. *Wise,* 53 Indiana, 32; *Packet Company* v. *Sickles,*
5 Wall. 580, 590; *Doty* v. *Brown,* 4 N. Y. 71; *Campbell* v. *Gross,*
39 Indiana, 155, 159; *Walker* v. *Chase,* 53 Maine, 258; *Wood* v.
*Faut,* 55 Michigan, 185; *Carleton* v. *Lombard, Ayers & Co.,* 149
N. Y. 137; *Hargus* v. *Goodman,* 12 Indiana, 629; *Campbell* v.
*Cross,* 39 Indiana, 155; *Roberts* v. *Norris,* 67 Indiana, 386;
*Birckhead* v. *Brown,* 5 Sandf. 134 (N. Y. Superior Court);
*Spicer* v. *United States,* 5 C. Cl. 34.

*Mr. William A. Ketcham* and *Mr. Robert S. Taylor,* with

whom *Mr. Roscoe O. Hawkins* and *Mr. Ferdinand Winter* were on the brief, for defendant in error:

The judgment does not depend in any respect upon the denial of any right secured by the Constitution of the United States, and no Federal question is involved. The jurisdiction of this court in the present case depends upon whether in the court below the defendant in error asserted the validity of the legislation by the general assembly of the State of Indiana, of 1897, and that the plaintiff denied such validity on the ground of its being repugnant to the Constitution of the United States, and that the decision was in favor of its validity, or whether any right claimed under the Constitution of the United States, and specially set up and claimed by the plaintiff in error, has been denied. 1 Compiled Statutes, U. S. 1901, § 709; *Duncan* v. *Mississippi,* 152 U. S. 377; *De Saussure* v. *Gaillard,* 125 U. S. 18; *Missouri* v. *Andriano,* 138 U. S. 497; *McNulty* v. *The People,* 149 U. S. 645; *Carothers* v. *Mayer,* 164 U. S. 325. Only the Federal question thus presented can be reviewed in this court. *Ashley* v. *Ryan,* 153 U. S. 436.

Where the case was decided in the court below on an independent ground, broad enough to maintain the judgment, and not involving a Federal question, this court will dismiss the writ of error without considering the Federal question. *Beatty* v. *Benton,* 135 U. S. 244; *Marrow* v. *Brinkley,* 129 U. S. 178; *Hale* v. *Akers,* 132 U. S. 554; *Eustis* v. *Bolles,* 150 U. S. 361; *Costello* v. *McConnico,* 168 U. S. 674; *Missouri Pac. Ry. Co.* v. *Fitzgerald,* 160 U. S. 556.

If merely the construction of state statutes is involved the writ of error will not lie. *Insurance Co.* v. *Treasurer,* 11 Wall. 204; or to review the decision of the court below upon questions of fact. *Dower* v. *Richards,* 151 U. S. 658; *Hedrick* v. *Atchison &c. Ry. Co.,* 167 U. S. 673; *Egan* v. *Hart,* 165 U. S. 188; or on questions of the admission or rejection of evidence which does not bear directly upon some matter of a Federal nature. *Cleveland &c. R. R. Co.* v. *Backus,* 154 U. S. 439; *Central Pac. Ry. Co.* v. *California,* 162 U. S. 91.

A Federal question is not presented simply because the party litigant asserts that the claim made against him by his adversary depends upon the assertion, or involves the denial, of some right secured to him by the Constitution or laws of the United States. The record must affirmatively show such to be the fact. *Crowell* v. *Randall*, 10 Pet. 368.

The assignment of errors, asserting the existence and decision against the plaintiff in error, of a Federal question, counts for nothing, unless from the record itself the facts appear. *Fowler* v. *Lamson*, 164 U. S. 252; *Clarke* v. *McDade*, 165 U. S. 168; *Walker* v. *Villavaso*, 6 Wall. 124.

And as to absence of Federal question, see *California* v. *Hollady*, 159 U. S. 674; as to when state legislation relating to remedy does not impair contracts, see Cooley's Con. Lim. 346, 357; *Ogden* v. *Saunders*, 12 Wheat. 213; *Been* v. *Haughton*, 9 Pet. 329; *Tennessee* v. *Speed*, 96 U. S. 69; *Chicago &c. R. R. Co.* v. *State*, 153 Indiana, 135; *Citizens' Bank* v. *Parker*, 192 U. S. 73, 85; *Yazoo & Miss. R. R. Co.* v. *Adams*, 180 U. S. 41.

Regulation of tolls by the legislature was not a condition precedent to the obligation of plaintiff in error to pay its surplus earnings to the Treasurer of State for the use of the common schools. Section 23 of the act of 1847 limited the amount that plaintiff in error should ever appropriate in profits to its own use.

When these sums were realized, the surplus, if any, after the payment of the expenses, and reserving such proportion as might be necessary for future contingencies, was payable to the Treasurer of State for the use of common schools, without reference to whether the State had taken action to regulate the tolls and freights of the company.

The road held the profits in trust upon demand of the State.

Corporations are mere creatures of law and have no powers except those expressly granted or indispensably necessary to the exercise of those expressly granted. *Commonwealth* v. *Erie & N. E. R. R. Co.*, 27 Pa. St. 339, 351; *Holyoke Co.* v. *Lyman*, 15 Wall. 500, 511; *Stourbridge Canal Co.* v. *Wheeley*,

2 B. & Ad. 792; 4 Thompson on Corp. § 5661; *Covington &c. Turnpike Co.* v. *Sandford,* 164 U. S. 578.

Mr. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the State of Indiana to ascertain and to recover from the plaintiff in error the total net profits made by the latter over fifteen per cent on the true cost of construction of its railroad, from the time when the net earnings equalled that cost with ten per cent on the same added. The claim of the State was made under § 23 of the charter of the railroad, approved January 26, 1847, and four acts of 1897 to be referred to. The complaint admits, and the answer sets up, a surrender on January 17, 1873, of the charter of 1847, on which the supposed obligation was based, and an acceptance of the general railroad law by the company, and also a judgment for the company in March, 1876, on a former complaint for the same cause. The answer also makes a general denial and invokes the Fourteenth Amendment and other relevant parts of the Constitution of the United States. The case was referred to a master, who ruled that the former judgment was not a bar, but ruled also that the company was not liable. The superior court ruled the other way and gave judgment against the company for $913,905.01. This judgment was affirmed by the Supreme Court of the State, and the case then was brought here by writ of error.

By § 22 of the charter the railroad is given absolute discretion in the fixing of charges. Then, by § 23: "When the aggregate amount of dividends declared shall amount to the full sum invested and ten per centum per annum thereon, the legislature may so regulate the tolls and freights that not more than fifteen per centum per annum shall be divided on the capital employed, and the surplus profits, if any, after paying the expenses and receiving [reserving?] such proportion as may be necessary for future contingencies, shall be paid over to the treasurer of State, for the use of common schools, but the cor-

poration shall not be compelled by law to reduce the tolls and freights so that a dividend of fifteen per centum per annum cannot be made; and it shall be the duty of the corporation to furnish the legislature, if required, with a correct statement of the amount of expenditures and the amount of profits after deducting all expenses," etc. By § 24: Semi-annual dividends of so much of the profits as the corporation may deem expedient are to be made, and "the directors may retain such proportion of the profits as a contingent fund to meet subsequent expenses as they shall deem proper." By § 35, repealed in 1848, the corporation is to keep a fair record of the whole expense of making and repairing its road, etc., and also a fair account of the tolls received, and the State is to have the right to purchase the stock of the company after twenty-five years for a sum equal, with the tolls received, to the cost and expenses of the railroad with ten per cent.

The complaint relied also upon an amendment of section 23, on February 24, 1897, attempting to make the above mentioned surplus profits a debt and to make the company accountable from the beginning of such profits. The complaint still further relied upon an act of January 27, 1897, requiring the railroad to account; an act of March 4, 1897, appropriating the net earnings of the company above fifteen per cent, etc., as above, to the use of common schools, and authorizing a demand and a suit; and an amendment of the general railroad law on February 18, 1897, after the surrender of this company's charter, providing that all liabilities to the State, whether inchoate or complete, under special charter, were and should be reserved, notwithstanding the past or future acceptance of the surrender of such special charters.

The Supreme Court, while agreeing that the right of the State must depend on the original charter, did give force to this later legislation, in terms, as providing a remedy, and, on the construction which we are compelled to give to the charter, did also give force in fact to the amendment to the provision attempting retrospectively to save the charter obligations after

a surrender had been accepted. Therefore the question is properly here whether these statutes impaired the rights of the railroad under the Constitution of the United States. For in order to determine whether the later legislation impairs those rights, this court must decide for itself what those rights were. If in the opinion of this court the State had lost all right to demand any sum whatever under § 23 of the charter, legislation necessary to enforce such a demand is invalid and may be pronounced so by this court, notwithstanding the fact that the cause of action now is based upon the original act. We shall recur to the question of our jurisdiction after discussing the merits of the case, which we must do to make what little we have to add plain.

The Supreme Court of the State seems, although it is not clear, to have construed § 23 as creating by itself alone a debt to the State which accrued as fast as surplus profits were realized, which, under that section, might have been required to be paid over to the treasurer of State. It is pointed out that in 1847 the State had no credit and was in need of roads and schools, and that therefore it was natural to provide for the handing over of any surplus after a liberal return to the owners of the road. It is thought that the express grant of an absolute right to fifteen per cent negatives the right to more, that the provisions for an account in §§ 23 and 35 and the mandatory language as to the surplus confirm this result, and that it is unreasonable to suppose that the legislature, after indicating what by the agreement of the parties would be a fair demand of the State, should leave the right of the State in abeyance until a future legislature should choose to act. In this way the amendment of § 23 in 1897 is practically carried into effect. While repudiated as legislation it is adopted by construction, and is found to express only the meaning of the original act.

We are driven to a different construction of the charter, notwithstanding the deference naturally felt for the decision of a state court upon state laws. The language is plain. The

legislature "may so" regulate tolls "that" not more than fifteen per cent shall be divided, "and" the surplus profit shall, ꝺ ꝺaid over. The word "may," it is agreed, is per= missive, not mandatory. In the next place it is only upon its regulation of tolls, so that not more than fifteen per cent shall be divided, that dividends are confined to that sum. Other- wise the general power, given by § 24, to declare such dividends as the company deems expedient, remains in force. Finally, the payment over of the surplus profits above fifteen per cent is not a separate, independent and absolute mandate, but is connected with "so regulate tolls that" by "and." Like the cutting down of dividends, it is a result of the regulation. Again, the duty of the corporation to furnish the legislature a statement of expenditures is only "if required." It might be required in order to be certain whether it was advisable to regulate tolls. Perhaps if the legislature had regulated them it might be required in order to find out what was due. The provision for a record and an account in the repealed § 35 seems to us to have little bearing. They were required there, primarily at least, with reference to the possible purchase of the stock by the State. We infer that the state courts con- sidered the words "regulate tolls" to refer solely to fixing the amount to be charged, and regarded the payment over of the surplus as an independent mandate. It seems to us that the words as here used meant more, and embraced not only fixing the amount to be charged to the public, but an order for the division of earnings between the railroad and the schools. The provision as to the surplus over fifteen per cent is not sufficiently accounted for if the regulation of tolls is intended to make the profits as near fifteen per cent as may be.

Not only the absolute discretion as to dividends given by § 24, but the similar discretion given by the same section as to the proportion of profits to be retained, confirms the gram- matical construction of § 23. Circumstances might change, and knowledge might change. It is agreed that they did not know much about railroads in 1847. The corporation

was allowed to make and to distribute or retain such earnings as it could, subject to the power of the State in certain events to require it to pay over extra profits, or to sell its stock. But which, and whether the State would make either demand, was left undecided, and until the State elected the whole earnings of the company were its own.

It follows that when the company surrendered its charter in 1873, there having been no attempt by the State to regulate tolls before that time, the company was free from liability or the possibility of demand. Therefore it is only by attempting, as it did attempt in its complaint, to apply the subsequent amendment of the general railroad law that the State can come into court. That law, it will be remembered, purported retrospectively to save rights under surrendered charters. It does not need argument to show that this amendment could not affect the plaintiff.

The case then stands thus: The state court has sustained a result which cannot be reached, except on what we deem a wrong construction of the charter, without relying on unconstitutional legislation. It clearly did rely upon that legislation to some extent, but exactly how far is left obscure. We are of opinion that we cannot decline jurisdiction of a case which certainly never would have been brought but for the passage of flagrantly unconstitutional laws, because the state court put forward the untenable construction more than the unconstitutional statutes in its judgment. To hold otherwise would open an easy method of avoiding the jurisdiction of this court. *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683, 697. We may add that it is admitted that one of the acts of 1897 was necessary to authorize a demand and so to create a cause of action. It was for want of an authorized demand that the former suit was held no bar. But in our opinion the State had no right in 1897 to make a demand.

*Judgment reversed.*