William M. HALLOWELL, Appellant,

v.

Paul W. KEVE, Director of the Division of Adult Corrections and the State of Delaware, Appellees.

No. 76–1721.

United States Court of Appeals,
Third Circuit.

Argued Jan. 13, 1977.

Decided April 22, 1977.

L. Vincent Ramunno, Wilmington, Del., for appellant.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for appellees.

Before ROSENN and HUNTER, Circuit Judges, and COOLAHAN, Senior District Judge.*

## OPINION OF THE COURT

COOLAHAN, Senior District Judge.

William M. Hallowell was convicted of second-degree murder in Delaware Superior Court on January 18, 1972. On appeal, the Delaware Supreme Court affirmed his conviction. *Hallowell v. State*, 298 A.2d 330 (1972). Hallowell subsequently filed a petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus in the United States District Court for the District of Delaware. Judge Stapleton denied his petition. *Hallowell v. Keve*, 412 F.Supp. 681 (D.Del.1976).

Appellant now advances two grounds for appeal from the denial of his petition for habeas corpus.[1] First, he argues that the District Court erred when it found that the Delaware State trial court did not deny him his rights to a jury trial, presumption of innocence, and due process by refusing to charge the jury on involuntary manslaughter. Second, he claims that the District Court should have found that the trial court's charge relieved the State of its duty under the Constitution as interpreted in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), to prove an absence of provocation and passion beyond a reasonable doubt. For the reasons stated below, we affirm.

The facts of the case are simple and not substantially in dispute.[2] On the evening of October 3, 1971, appellant and his wife,

---

* James A. Coolahan, United States Senior District Judge for the District of New Jersey, sitting by designation.

1. Appellant raised several other grounds for relief in his original petition. The District Court dismissed those claims on the ground that appellant had failed to exhaust his State remedies. *Hallowell v. Keve*, 412 F.Supp. at 682 n.1. Appellant does not appeal from that ruling.

2. The Delaware Supreme Court and United States District Court opinions have slightly, though immaterially, differing versions of the facts. This Court relies most heavily on those portions of the trial transcript which were reproduced in appellant's appendix, pp. 31–54.

Fern, returned from an American Legion Hall meeting to their mobile home located in a trailer park. An altercation developed between them. Appellant struck his wife, who ran from the trailer crying. She went next door, about five feet away, to the trailer belonging to her daughter, Carol, and her son-in-law, Fred Ellingsworth. At that time Ronald Charest, Fern Hallowell's first husband, was present in his daughter Carol's trailer.

Appellant, desiring his wife to return home, followed her to the Ellingsworth trailer, swearing profusely as he entered. Carol asked appellant to leave. Charest met appellant at the door declaring that "any man who would strike a woman was no man at all." This statement, together with the thought that Charest and the Ellingsworths were interfering in his personal affairs, angered appellant. He left the Ellingsworth trailer and returned to his trailer, where he took an 8-inch knife from a kitchen drawer intending to return to the Ellingsworth trailer. Appellant testified that he planned to use the knife to "pull a bluff" on Charest. However, upon reflection, he decided not to take the knife with him, and placed it on a divider between the living room and dining area of his trailer.

Hallowell, still angry, returned to the Ellingsworth home intending to challenge Charest to a fight. He entered and found Charest seated on a couch, whereupon he challenged Charest to a fight. He stated that Charest began kicking him, and that they exchanged "blows." He added that Charest threw two objects at him. One, which he could not identify, hit him on the tip of his thumb. The other was a child's stool. When the stool was thrown, it missed appellant but hit the front door of his own trailer, shattering the glass pane. It is not totally clear from the record, but it seems that appellant and Charest had moved outside the trailer at this point. Hallowell returned to his trailer and picked up the 8-inch knife from the divider. He testified that he did not fear that Charest would follow him back to his trailer.

The Ellingsworths testified that Charest never kicked, punched, or threw anything, or otherwise touched appellant before he came back with the knife.

Appellant stated that after he snatched the knife, he started back to the Ellingsworth trailer to scare Charest, and "pull a bluff" on him. It appears that appellant met Charest outside between the two trailers. Hallowell said he had no intention of making contact with the knife, but admitted on cross-examination that he knew the knife was a dangerous instrument.

Hallowell described the stabbing in this fashion:

"And as I made a swipe, it was not at full arm's length, I just went like that [indicating] so as to make him back down more, or scare him more, and he seemed to take a step forward with his arms up like this [indicating], and after I realized what happened I just stood there. I wanted to say I was sorry, but I couldn't say nothing." (Appellant's appendix 33)

On cross-examination appellant repeated that he took a swipe at the victim when they were very close together. The prosecutor said:

"One step. That knife must have been pretty close to him if that one step forward got the knife into him far enough to kill him.

A. I had no idea I was that close to him. I had no intention of being that close to him." (Appellant's appendix 46)

The prosecutor asked him why he wanted to back the victim down in the victim's own daughter's house.

"Q. Back him down in his own daughter's house?

A. Well, just make him go off to the side, because I didn't want to fight any more.

Q. If you didn't want to fight any more, Mr. Hallowell, why didn't you go back in your trailer and shut the door?

A. I don't know, sir." (Appendix 45–46)

Charest later died from the stab wound.

After appellant stabbed Charest, he apparently reentered the Ellingsworth trailer.

Fred Ellingsworth ordered him out at gun point. Hallowell returned to his trailer, washed the blood off the knife, called his attorney, and awaited the arrival of the police. He testified that he had been drinking earlier at the American Legion Hall, but denied being intoxicated. The District Court found that there was nothing in the record to indicate that he was unable to perceive events or otherwise failed to understand the nature of his acts.

The jury returned a verdict of second-degree murder, and the judge sentenced Hallowell to life imprisonment.

■ Hallowell appealed his conviction to the Delaware Supreme Court, which rejected his claim that the trial court's refusal to charge the jury on involuntary manslaughter was error. Normally jury instructions in State trials are matters of State law. *United States ex rel. Stanbridge v. Zelker*, 514 F.2d 45, 50 (2d Cir. 1975), *cert. denied*, 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975). However, they are reviewable by a federal court on collateral attack where the instruction violates specific federal constitutional standards imposed on the States through the due process clause of the Fourteenth Amendment. *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). On collateral attack, the District Court found no constitutional infirmity in the trial judge's refusal to charge as

requested. Appellant alleges that the District Court erred in this finding.

Appellant states that his primary defense at trial was his lack of subjective intent to kill Charest. He testified that he never intended to touch the victim with the knife. He merely intended to back the victim down, scare him, and "pull a bluff" on him. He claims that he never lunged with the knife. Hallowell's position is that this testimony was sufficient to warrant a charge of involuntary manslaughter. The trial judge not only refused to charge the jury as appellant requested, but he specifically instructed the jury that they were not to consider involuntary manslaughter. Appellant argues that this instruction essentially eliminated his primary defense and, consequently, deprived him of his presumption of innocence, his right to a jury trial, and his right to due process of law.

■ The Delaware Supreme Court found, as a matter of State law, that involuntary manslaughter is the unintentional "killing of another without malice while engaged in the doing of an unlawful act, *not in itself felonious or tending to do great bodily harm.*" *Hallowell v. State, supra*, 298 A.2d at 332.[3] Appellant's own testimony demonstrates that he was engaged in an unlawful act, *i. e.*, taking a "swipe" at the victim with a knife, in itself tending to great bodily harm.[4] Hallowell testified that

**3.** The Court noted that *State v. Donovan*, 1 Terry 257, 40 Del. 257, 8 A.2d 876 (1939), might seem, at first glance, inconsistent with its statement of the law. *Hallowell v. State, supra*, 298 A.2d at 332. In *Donovan* the defendant, who was seated in a car with the victim, fired her pistol in the direction of the victim. The defendant testified that she only intended to scare, and not harm, the victim. The trial court charged the jury that this act was within the definition of involuntary manslaughter. The Court in *Hallowell* distinguished *Donovan* on the ground that the defendant there was tried for manslaughter only, and not murder. It reasoned that if the charge had been murder, the language employed in the charge would have been different. It would have been consistent with its interpretation of the law. *See, State v. Morahan*, 7 Pennew. 494, 7 Del. 494, 77 A. 488 (1895); *State v. Arnold*, 3 Terry 47, 42 Del. 47, 27 A.2d 81, 83 (1942). Appellant claims that this holding is in error. We inti-

mate no opinion on the matter. It is within the exclusive competence of the Delaware Supreme Court to decide questions of Delaware law. *Mullaney v. Wilbur, supra*, 421 U.S. at 691, 95 S.Ct. 1881. Appellant does not allege, nor do we find, that Delaware's interpretation of its law raises a federal question.

The District Court found, and we agree, that unless the substantive rules of Delaware law are alleged to violate substantive due process, there is no federal question. Appellant has failed to show that the definition of involuntary manslaughter employed at his trial was unreasonable or otherwise violative of due process.

**4.** The Delaware Supreme Court held that a "rebuttable presumption" of the malice necessary to find second-degree murder arises from an act tending to do great bodily harm. The District Court read the Delaware Supreme Court's opinion in *Hallowell* to say that the rebuttal evidence would be in the nature of

when he went to the Ellingsworth trailer the second time, he intended to challenge the victim to a fight and not merely to retrieve his wife. He stated that when he ran away from the fight, he was not afraid of being pursued. Once safely back in his own trailer, he decided to return to the Ellingsworth trailer "to back [the victim] down" with the knife, which he testified he knew was a dangerous weapon. He admitted taking a "swipe" with the knife at the victim, though he said he did not realize that he was close to him at the time.

■ Even if the jury were to have believed that Hallowell lacked the intent to kill Charest, his own testimony would not support, under Delaware law as interpreted by its highest court, a finding of involuntary manslaughter. The District Court correctly noted that only where a State court's interpretation of its own law appears to be an "obvious subterfuge to evade consideration of a federal issue," *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 129, 65 S.Ct. 1475, 1480, 89 L.Ed. 2092 (1945); *see also, Ward v. Love County*, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1920); *Terre Haute & I. R. Co. v. Indiana ex rel. Ketcham*, 194 U.S. 579, 24 S.Ct. 767, 48 L.Ed. 1124 (1904),

will a federal court re-examine the State court's determination. Here there has been no such evasion; therefore, this Court is bound by the Delaware Supreme Court's interpretation of Delaware law. *Mullaney v. Wilbur, supra*, 421 U.S. at 691, 95 S.Ct. 1881; *Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Murdock v. City of Memphis*, 87 U.S. (20 Wall) 590, 22 L.Ed. 429 (1875).

■ Neither due process nor any other constitutional guarantee is offended by a trial judge's refusal to charge the jury on a matter not presented by the evidence. *United States v. Hill*, 417 F.2d 279, 281–282 (5th Cir. 1969); *Pavkovich v. Brierley*, 360 F.Supp. 275, 280 (W.D.Pa.1973), aff'd without opinion, 493 F.2d 1401 (3d Cir. 1974); *Kregger v. Bannan*, 170 F.Supp. 845, 847 (E.D.Mich.1959), aff'd per curiam, 273 F.2d 813 (6th Cir. 1960).

■ This Court finds no merit in appellant's contention that failure to instruct the jury on involuntary manslaughter denied him his rights to a jury trial, *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1964), and to his presumption of innocence, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).[5] Appel-

justification, excuse, or mitigation rather than evidence of a lack of subjective intent to kill. The charge to the jury makes this clear. Thus, the District Court concluded that Delaware's highest court interpreted its law to mean that a subjective intent to kill or seriously injure is not a necessary element of second-degree murder. We agree with the District Court's reading of *Hallowell v. State, supra.*

Appellant, relying on *Bouie v. Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), claims that the Delaware Supreme Court overruled a consistent line of procedural decisions on this legal point with the retroactive effect of denying him a hearing. This contention lacks support in fact and law. In *Mullaney v. Wilbur, supra*, 421 U.S. at 690 n.10, 95 S.Ct. at 1885, the Court rejected a similar argument by Mullaney. It summarized the *Bouie* holding in these terms:

"In that case a State Supreme Court's reinterpretation of a criminal statute was so novel as to be 'unforeseeable' and therefore deprived the defendants of fair notice of the possible criminality of their acts at the time they were committed. Thus, the retroactive application of the new interpretation was itself a denial of due process. See also *Brink-*

*erhoff-Faris Co. v. Hill*, 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930)."

As the District Court noted, *Hallowell* was consistent with prior Delaware law on this point. *See, e. g., Ruffin v. State*, 11 Terry 83, 50 Del. 83, 123 A.2d 461 (1956); *Powell v. State*, 7 Terry 551, 46 Del. 551, 86 A.2d 371 (1952); *Bantum v. State*, 7 Terry 487, 46 Del. 487, 85 A.2d 741, 751 n.2 (1952). Additionally, the Delaware Court did not redefine its criminal code after Hallowell was indicted to prescribe acts as criminal which were not criminal when committed. Appellant was not denied fair warning by the Delaware homicide statutes which proscribed unlawful killings. Unlike the situation in *Bouie*, the Delaware court's interpretation of its law operated neither as an *ex post facto* law, nor a denial of due process of law.

We agree with the District Court that substantive due process does not require a State to include a subjective intent to kill as an element of second-degree murder.

5. It is not clear from the record whether appellant raised this particular constitutional basis for his claim before the District Court. Assum-

lant received a jury trial on all issues presented by the evidence, and he did not lose his presumption of innocence because the trial court refused to charge on an issue not presented by the evidence. His own testimony precluded the charge he requested.

The trial court instructed the jury on four possible verdicts: second-degree murder, voluntary manslaughter, assault, and not guilty. If the jury believed that the killing was accidental, it could have either acquitted appellant, or found him guilty of one of the two lesser crimes. The jury's verdict indicates that it never even reached voluntary manslaughter, because it obviously found malice on the part of appellant.

■ This, of course, leads us to appellant's second claim that the trial court incorrectly relieved the State of its duty to prove an absence of provocation and passion, the factors that negate malice, beyond a reasonable doubt.[6]

As the District Court observed, the controlling case on this question is *Mullaney v. Wilbur, supra.* In *Mullaney,*[7] the Supreme Court invalidated a Maine statute which required a defendant charged with murder to prove by a fair preponderance of the evidence that he acted "in the heat of passion on sudden provocation" to reduce the homicide to manslaughter. Maine law defines both murder and manslaughter to be different degrees of the same crime, felonious homicide. Felonious homicide is defined as the unlawful, *i. e.,* neither justifiable nor excusable, and intentional killing of another. Malice aforethought alone distinguishes murder from manslaughter. If the jury found malice aforethought, there could be no manslaughter because malice was defined as an essential element of murder. If the jury found no malice, the crime would be reduced to manslaughter. Once the prosecution had proved beyond a reasonable doubt that the homicide was both unlawful and intentional, Maine law conclusively implied malice unless the defendant rebutted the inference with proof by a fair preponderance of the evidence that he acted in heat of passion on sudden provocation.

The Supreme Court accepted Maine's single-crime interpretation of its own homicide statute. However, the Court concluded that placing the burden on the defendant to prove heat of passion was offensive to the principle of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that the prosecution must shoulder the burden of

ing he did, we find the contention to be totally meritless. The judge charged the jury on the presumption of innocence. He also charged the jury on voluntary manslaughter and assault as well as not guilty. Therefore, the jury could have arrived at a verdict consistent with the defendant's theory of the case.

Appellant's parallel claim under the State Constitution is not cognizable here.

6. The District Court found that appellant had not raised this issue on appeal to the Delaware Supreme Court. Normally, comity requires that a State court be given an opportunity to address a question before federal review. *See generally, Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Hart & Wechsler, *The Federal Courts and the Federal System,* pp. 1487–1488 (2d ed. 1973). However, the District Court correctly found that State remedies need only be exhausted where they are both adequate and available. 28 U.S.C. § 2254; *Preiser v. Rodriguez,* 411 U.S. 475, 493, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Where State law clearly would make pursuit of a State remedy futile, exhaustion is not required. *Mott v. Dail,* 337 F.Supp. 731 (E.D.N.C.1972).

In *Fuentes v. State,* 349 A.2d 1 (Del.Sup.Ct. 1975), the court, in applying a *Mullaney* test in finding a Delaware statute unconstitutional, refused to apply the rule retroactively. Appellant's direct appeal was decided before the *Fuentes* decision. The District Court found that any attempt by appellant for State relief in light of *Fuentes* would be unsuccessful. Therefore, the court properly concluded he had exhausted his adequate State remedies.

7. The District Court found it unnecessary to reach the issue of the retroactivity of *Mullaney* because it found the charge *sub judice* not to offend the rule articulated in that case. In view of our holding, we likewise need not reach that issue. *But see,* Judge Aldisert's dictum in *United States ex rel. Castro v. Regan,* 525 F.2d 1157, 1160 n.3 (3d Cir. 1975), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). See generally discussion of retroactivity standards in this Circuit in *United States v. Lenardo,* 420 F.Supp. 1148 (D.N.J.1976), *remanded in accordance with District Court opinion,* 542 F.2d 1168 (3d Cir. 1976).

proof beyond a reasonable doubt on every element of the crime charged.[8] Maine contended that absence of heat of passion on sudden provocation was not a "fact necessary to constitute the *crime*" of felonious homicide. *Id.*, 421 U.S. at 697, 95 S.Ct. at 1888. The State argued that it complied with *Winship* by requiring proof beyond a reasonable doubt of both unlawfulness and intent, the elements of felonious homicide. Absence or presence of heat of passion only affected punishment, not guilt. However, the Supreme Court rejected this restrictive reading of *Winship*. The Court stated, "*Winship* is concerned with substance rather than this kind of formalism." *Id.* at 699, 95 S.Ct. at 189.

The *Mullaney* Court observed that the difference in penalties between murder and manslaughter was significant. Thus, a defendant's liberty interest could be substantially affected by a finding of one degree of culpability as opposed to another. Under Maine's homicide law, a defendant could be found guilty of murder when the proof produced at trial may indicate a lesser finding of guilt was warranted. Consequently, Maine's homicide statute, by placing the burden on the defendant of reducing the degree of culpability, denigrated the interests found critical in *Winship*. Those interests were avoidance of significant deprivations of a defendant's liberty and the protection of the reliability of jury verdicts.

The District Court in the case at bar found that "[g]iven this rationale, it is difficult to read *Mullaney* narrowly." *Hallowell v. Keve, supra*, 412 F.Supp. at 686. The court concluded from *Mullaney* that the due process clause is offended whenever a State is relieved of its constitutional duty to prove beyond a reasonable doubt a "critical fact in dispute" in a homicide prosecution. It interpreted "critical fact in dispute" to mean "any fact fairly put at issue by the

evidence the presence or absence of which would have substantial impact upon the defendant's liberty interest and the determination of which on less than a reasonable doubt standard would substantially increase the likelihood of an erroneous murder conviction." 412 F.Supp. at 686.

The court viewed the evidence in the case *sub judice* as placing in issue the question whether appellant killed the victim in a heat of passion occasioned by provocation. The District Judge found under Delaware law that heat of passion occasioned by provocation was a "critical fact" in *Mullaney* terms.[9] He observed that heat of passion was the distinguishing factor between second-degree murder and voluntary homicide, with substantially different penalties (second-degree murder carried a maximum penalty of life, whereas voluntary manslaughter carried a 30-year maximum sentence).

The court characterized the issue before it in these terms (412 F.Supp. at 687): "If the charge can fairly be interpreted as placing any burden of persuasion regarding this issue upon the defendant or if the charge, fairly read, relieved the State of its burden on this issue by presumption or otherwise, the conviction for second-degree murder cannot stand."

We agree with both the District Court's analysis of *Mullaney* and its characterization of the issue as presented in the case at bar. As the District Court noted, if the charge read in its entirety conveyed the proper instruction to the jury on the State's burden of proof in accordance with the *Mullaney* standard, then there is no error. *Mullaney v. Wilbur, supra*, 421 U.S. at 690–691 n. 10, 95 S.Ct. 1881.

In *Cupp v. Naughten, supra*, 414 U.S. 141, 94 S.Ct. 396, the defendant attacked in a petition for habeas corpus his Oregon arm-

---

**8.** Justice Brennan, writing for the Court in *In re Winship, supra*, 397 U.S. at 364, 90 S.Ct. at 1073, stated:

"Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

**9.** The District Court found that the Delaware Supreme Court by necessary implication recognized heat of passion as a "critical fact" in *Fuentes v. State, supra*, 349 A.2d 1.

ed robbery conviction on the ground that the trial judge's jury instruction that "[e]very witness is presumed to speak the truth" violated *Winship* principles. The defendant did not testify at trial, nor did he offer any witnesses to testify on his behalf. Therefore, the only witnesses who testified were State witnesses. He claimed that when the judge charged the jury that witnesses were presumed to speak the truth, this presumption relieved the State of its burden of proving guilt beyond a reasonable doubt. *Cupp v. Naughten, supra,* 414 U.S. at 151, 94 S.Ct. 396 (Brennan, J., dissenting).

Justice Rehnquist writing for the majority disagreed. He found that the jury was correctly and explicitly instructed on both the defendant's presumption of innocence and the burden-of-proof standard, and that the charge in its entirety did not offend *Winship* standards. He said:

> " . . . the question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400.

He earlier noted:

> "In determining the effect of this instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruction to a jury may not be judged

in artificial isolation, but must be viewed in the context of the overall charge. *Boyd v. United States,* 271 U.S. 104, 107 [, 46 S.Ct. 442, 70 L.Ed. 857] (1926). While this does not mean that an instruction by itself may never rise to the level of constitutional error, see *Cool v. United States,* 409 U.S. 100 [, 93 S.Ct. 354, 34 L.Ed.2d 335] (1972),[10] it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Id.* at 146–147, 94 S.Ct. at 400.

The Court concluded that "[w]hatever tangential undercutting of these clearly stated propositions [burden of proof and presumption of innocence] may, as a theoretical matter, have resulted from the giving of the instruction on the presumption of truthfulness is not of constitutional dimension." *Id.* at 149, 94 S.Ct. at 401.

Similarly, this Court in *United States ex rel. Castro v. Regan, supra,* 525 F.2d 1157, looked to the entire charge when it entertained a *Mullaney* challenge to a New Jersey homicide instruction. Though the facts in *Castro* distinguish it from the case at bar,[11] we find the general proposition that a

---

**10.** In *Cool* the jury was instructed that it should ignore the testimony of the defendant's accomplice, who testified for the defendant, unless it believed his testimony true beyond a reasonable doubt. The Court reversed the conviction though this instruction comprised only one sentence of the entire charge. However, the Court found that this instruction infected the entire charge.

**11.** In *Castro* the defendant had been bar-hopping all night. He got into an argument with another man over a woman and returned home for a shotgun. When he re-entered the bar with the gun, his friend intervened. The friend, with arms upstretched, said "peace, peace." The defendant pushed the friend in the chest with the shotgun, which discharged, killing him. The trial judge charged the jury that (525 F.2d at 1159):

> "The *law presumes that all unlawful* homicides, that is all unlawful *killings, are committed with malice unless the lack of malice is affirmatively demonstrated by the evidence.*"

The court in *Castro* rejected the State's semantic argument that it was the *evidence,* and not the defendant, which had to demonstrate affirmatively the lack of malice to reduce the crime to manslaughter. 525 F.2d at 1160.

Judge Aldisert, speaking for the court, found that the trial judge repeatedly told the jury that the prosecution had to prove beyond a reasonable doubt all essential elements of the crime charged and that manslaughter was killing without malice. In addition, after four and one-half hours of deliberation, the trial judge again charged the jury in full on each of five possible verdicts. He did not recharge on the challenged portion of the charge, and he never

reviewing court must view the challenged instruction in the context of the entire charge instructive here.

The District Court correctly looked to the charge in its entirety. We now turn to an examination of the charge.[12] The challenged portion reads:

"Murder in the second degree, therefore, occurs when a killing is done without justification or excuse and without adequate provocation, and when it is done with a wicked and depraved heart or with a cruel and wicked indifference to human life. *In a case of that kind the law implies malice and renders it incumbent upon the accused to show by evidence that the killing was not done maliciously, or in fact that there were circumstances of mitigation, extenuation, justification, or excuse*". (Emphasis added.) 412 F.Supp. at 688.

Appellant claims that the italicized portion of the charge lifted the burden of proof from the State on the issue of absence of heat of passion and provocation.

■ The District Court reasoned (412 F.Supp. at 689):

stated that the defendant had to establish by a preponderance of the evidence that he acted in the heat of passion to reduce the crime to manslaughter. The trial judge charged that "there has to be proof beyond a reasonable doubt that there was the unlawful killing of another human being with malice and without reasonable provocation or justifiable cause or excuse." The court, viewing the charge as a whole, found no violation of *Mullaney* principles.

The court also found it significant that New Jersey defined malice as a substantive element of intent, whereas Maine viewed malice as a policy presumption, "indicating only that absent proof to the contrary a homicide was presumed not to have occurred in the heat of passion." 525 F.2d at 1160, quoting *Mullaney v. Wilbur, supra,* 421 U.S. at 694, 95 S.Ct. 1881. The court concluded by noting from *Mullaney,* at 704, 95 S.Ct. at 1892, "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation *when the issue is properly presented.*" (Emphasis added.) 525 F.2d at 1160–1161. The facts in *Castro* demonstrate that the evidence may not have placed in issue the question whether the defendant acted in a heat of passion. The court implicitly makes this point.

**12.** All the relevant portions of the charge are set out in the District Court's opinion. *Hallowell v. Keve, supra,* 412 F.Supp. at 687–689.

"The challenged paragraph can be taken as a statement (1) that second degree murder is the killing of another with a depraved heart or 'wicked indifference' and without justification, excuse or adequate provocation and (2) that when the State's case shows no mitigation by way of provocation, the defendant must come forward with some evidence which will put provocation and heat of passion fairly in issue. If the challenged paragraph is so read, it does not take the burden of persuasion from the State's shoulders and is entirely consistent with the teachings of *Mullaney.*"

However, the District Court found that this interpretation of the challenged portion of the instruction would be confusing to the jury, who could not be expected to distinguish between the burden of moving forward with the evidence and the burden of proof.[13] We do not find that the risk of confusion was as substantial as the District Court thought.[14] However, we find, as did

**13.** The *Mullaney* Court discussed at several points the distinction between the burden of moving forward and the burden of proof. *See,* 421 U.S. at 694 n. 16, 695 n. 20, 702 n. 30, 702–703 n. 31, 95 S.Ct. 1881. The Court held specifically that

"Many States do require the defendant to show that there is 'some evidence' indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving the absence of passion beyond a reasonable doubt [citations omitted]. *Nothing in this opinion is intended to affect that requirement.*" (Emphasis added.) *Id.* at 701–702 n. 28, 95 S.Ct. at 1891.

**14.** The District Court felt that because appellant had raised the issue of heat of passion, there was no need to instruct the jury on the burden of moving forward on that issue. In addition, he observed, Delaware law at that time placed the burden of persuasion on that issue on the accused. *Quillen v. State,* 10 Terry 114, 49 Del. 114, 110 A.2d 445 (1955). The court concluded that the trial judge may not, therefore, have intended the charge merely to instruct the jury on the burden of moving forward. *Id.* 421 U.S. at 689 n. 21, 95 S.Ct. 1881. The test is not what the trial court may have intended, but rather what the jury might have understood the charge to mean.

the District Court, that the jury was not misled as to the State's proper burden.

The trial court instructed the jury that by the defendant's plea of not guilty every essential element of the State's case against him was placed in issue. The judge clearly told the jury that it was the State's burden to *prove every essential element of the State's case beyond a reasonable doubt.* He instructed the jury that malice distinguished murder from manslaughter. He stated that malice had to be present to constitute murder. He re-emphasized the point by saying that "[w]ithout malice there can be no murder, and with malice there can be no manslaughter." Therefore, the jury was made aware that malice was an essential element of murder and, consequently, the State had to prove it beyond a reasonable doubt. The judge defined malice at great length. He charged that malice could be shown by the character of the attack and surrounding circumstances. Essentially he charged that malice could be shown by circumstantial [15] evidence. He said:

> "When the fatal attack was *unlawful* and *cruel*, and *voluntarily* committed, when it was committed *without adequate provocation* and in circumstances which show a *wicked indifference* to human life or with a *reckless disregard* of the consequences, in those situations the law implies or infers malice." (Emphasis added.) 412 F.Supp. at 687.

The trial judge's message here is that if the circumstances showed the elements of malice, the jury could infer that state of mind. He also clearly stated that malice meant "without adequate provocation." He reiterated the point later in the charge indicating that only absent "sufficient cause or provocation" could malice be inferred.

What the challenged language connotes in this context is that when a killing is done "without justification or excuse and without adequate provocation," [16] *and* with the wicked, depraved heart *or* with a cruel and wicked indifference to human life (the elements of malice), then the law implies malice. He then charged that the defendant had to show some evidence to indicate he lacked what appeared to be a wicked and depraved heart or a cruel and wicked indifference to human life, or some mitigating circumstances, extenuation, justification or excuse. More or less, he had to present the issue in order for the State to have to rebut it beyond a reasonable doubt.

The judge went on to define voluntary manslaughter as an unlawful killing *without* malice. He again told the jury that malice distinguishes murder from manslaughter. He gave them an example of a voluntary manslaughter situation. He said that if in a sudden fight, without time for reflection, one kills, it is voluntary manslaughter. This example comported with the appellant's primary defense. He stated that where a dangerous weapon was used,[17] the provocation had to be great so as to produce "an actual frenzy of the mind" rendering the "accused for the time being utterly deaf to the voice of reason." He then again contrasted malice with provocation.

The trial judge charged specifically that if the jury found *beyond a reasonable doubt* that Hallowell killed Charest with malice, then they should find him guilty of second-degree murder. He then said:

> "If you *do not find beyond a reasonable doubt that the killing was done with malice,* but do find beyond a reasonable doubt that the defendant killed Ronald Joseph Charest under such circumstances

---

**15.** Delaware law required an explicit showing of malice for first-degree murder, but only required an implicit showing of malice for second-degree murder.

**16.** This is the third time the judge indicated that malice need be without adequate provocation, justification or excuse.

**17.** In oral argument appellant's counsel claimed that the trial court erred in charging

that the knife was a dangerous weapon. Counsel argued that a knife could be used in certain contexts not dangerous. We cannot accept that proposition. Appellant admitted at trial that he understood the knife to be a dangerous weapon. He used the 8-inch knife as a weapon. We find counsel's position in all respects devoid of merit.

as to amount to voluntary manslaughter, as I have defined that crime to you, *then you should find the defendant* guilty of voluntary manslaughter." (Emphasis added.) 412 F.Supp. at 688.

The trial judge then proceeded to charge the jury on the defendant's presumption of innocence. He stated, "[t]he burden of proving the commission of the offense rests upon the State." Clearly, because he had charged them that malice was an essential element of second-degree murder, and that meant no adequate provocation, cause, excuse, mitigation, or heat of passion, then the State had to prove it beyond a reasonable doubt in order to prove murder in the second degree.

Under these circumstances, the charge in its entirety shows that the challenged language only charged the burden of moving forward. We do not believe that a jury would fail to understand that the State had to prove malice beyond a reasonable doubt to warrant a second-degree murder conviction.

We otherwise agree with the District Court's findings. The District Court concluded that the charge made clear that malice and heat of passion were mutually exclusive and that malice was an essential element of second-degree murder which the State had to prove beyond a reasonable doubt. We agree with the District Court's conclusion (412 F.Supp. at 690) that:

> "Thus, the court made it clear to the jury that in order to find malice they had to find a state of mind free from passion generated by provocation. Because this point as well as the State's burden to prove malice beyond a reasonable doubt were driven home to the members of the jury, they must have realized that they could not bring back a verdict of second degree murder unless they were satisfied beyond a reasonable doubt that petitioner

did not act in a fit of passion engendered by provocation for his victim."

The facts, though sufficient to raise the issue of heat of passion because the appellant had been insulted by Charest, including those adduced from appellant's testimony, could have easily supported a finding beyond a reasonable doubt of no adequate provocation or heat of passion. This is so a fortiori if the jury believed the Ellingsworths' testimony.

We find that the District Court's holding that none of the interests sought to be protected by *Mullaney* were jeopardized by the charge was not error. Appellant's petition for habeas corpus was properly dismissed.

JAMES HUNTER, III, Circuit Judge, dissenting:

Because I remain convinced that the charge *can* fairly be interpreted as placing the burden of persuasion regarding provocation upon the defendant, in violation of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), I must respectfully dissent.

The issue in *Mullaney, supra*, considered previously by this court in *United States ex rel. Castro v. Regan*,[1] 525 F.2d 1157 (3d Cir. 1975), could scarcely be more important to criminal defendants, involving as it does the state's burden of proof. Here, defendant Hallowell was apparently entitled to a charge on voluntary manslaughter: no one disputes that "the evidence fairly placed at issue the question of whether the fatal wound was inflicted in a heat of passion occasioned by provocation." District Court opinion, 412 F.Supp. at 686. If the jury believed that the killing occurred in a heat of passion occasioned by provocation, it would ordinarily return a verdict of voluntary manslaughter. If it found the killing

---

1. In finding no *Mullaney* violation in *Castro, supra*, we noted, as a "critical distinction," that the relevant concept of malice in that case connoted an active element, such as a wicked and depraved heart—not merely a passive presumption that would stand unless disproved by a showing of, *e. g.*, provocation.

We also found significant that in *Castro* the jury was completely and correctly re-charged after some four and one-half hours of deliberation; the later charge did not repeat the challenged portion. No similar "complete and unambiguous" charge appears in the case *sub judice*.

malicious and without adequate provocation, it would return a verdict of second degree murder.

*Mullaney* requires, as the majority concedes, that the burden of proof on heat of passion cannot be placed on the defendant. Thus, as the district court noted, if the state judge's charge to the jury could fairly have been interpreted to mean the defendant had the burden of persuasion on that critical issue, then the conviction for second degree murder cannot stand.

The challenged portion of the charge, in my view, clearly places the burden of proof on the defendant. I discern no other plausible interpretation of

" . . . the law implies malice *and renders it incumbent upon the accused to show* by evidence that the killing was not done maliciously or in fact that there were circumstances of mitigation, extenuation, justification or excuse."

(Emphasis added).

The majority claims that the emphasized language "only charged the burden of moving forward." To me, this requires a strained and difficult to understand reading, one which we should not require of juries.[2] On this, I agree fully with the district court:

"I cannot, however, accept the proposition that this is the message which this paragraph would convey to a jury with no understanding of the distinction between the burden of persuasion and the burden of going forward with evidence. In the absence of clear instructions to the contrary, I believe there would be a substantial risk of a juror taking this portion of the instruction to mean that the accused had the burden of proving heat of passion."

412 F.Supp. at 689–90. The jury, moreover, was not instructed on the distinction between going forward with evidence and persuasion precisely because, at the time, state law apparently *did* place the burden of persuasion on the defendant to prove heat of passion. *See* majority opinion, footnote 15. This trial also took place prior to the *Mullaney* decision.

The only remaining consideration, then, is whether the charge as a whole overcomes the constitutional infirmity of a small portion of it. The tortuous argument of the district court, adopted by the majority, runs along the following lines. During the charge, the jury is told:

1. The state has the burden of proving beyond a reasonable doubt every element of the crime.

2. The elements of second degree murder include malice, which can be implied.

3. Malice is two things: (1) positively, it is a wicked and depraved heart; (2) negatively, it is the absence of adequate provocation.

4. Malice will be implied if a deadly weapon is used without adequate provocation.

5. Therefore, the state *by implication* must have the burden of proving beyond a reasonable doubt that this killing was done without adequate provocation.

I cannot agree that the jury more likely than not went through such difficult syllogistic reasoning and with enough ease then to discount the much clearer statement— that the law implies malice, and renders it incumbent upon the accused to show there was provocation.

In sum, I am gravely concerned that the state was improperly relieved of its burden of proof on a critical factor, in direct violation of *Mullaney*. In this criminal case, the difference in sentencing for second degree murder and voluntary manslaughter is the difference between a life sentence and a maximum of thirty years. I would hold that there has been a violation of *Mullaney*, assuming *arguendo* that *Mullaney* would be applied retroactively, an issue which is not now before us, given the majority's disposi-

2. Indeed, this court rejected a similar argument, by the State, in *Castro, supra*, calling it a "semantic distinction." 525 F.2d at 1160.

tion of the case. *See* majority opinion, footnote 7. Because of the magnitude of possible harm flowing from the constitutionally deficient charge, I respectfully dissent.