John J. WATERMEIER

v.

The LOUISIANA STADIUM AND EXPOSITION DISTRICT and the Board of Commissioners Thereof.

Civ. A. No. 69-2601.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 22, 1969.

Sidney M. Bach, Joseph Bernstein, Bernstein & Bach, New Orleans, La., for plaintiffs.

Harry B. Kelleher, Glen G. Magnuson, Jr., Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Harold B. Judell, Foley, Judell, Beck, Morel & Bewley, New Orleans, La., for defendants.

Before AINSWORTH, Circuit Judge, and HEEBE and CASSIBRY, District Judges.

## PER CURIAM.

This is a suit by two Louisiana taxpayers seeking injunctive relief to restrain and enjoin the Louisiana Stadium and Exposition District and the Board of Commissioners of the District from carrying out certain transactions [1] in connection with the planning, financing and construction of a proposed "Domed Stadium" to be built in New Orleans. The domed stadium project was authorized by a 1966 amendment to the Constitution of Louisiana. The validity of these transactions under the Louisiana Constitutional Amendment authorizing them has already been litigated by the Supreme Court of Louisiana which upheld them under state law. Arata v. Louisiana Stadium and Exposition District, La., 225 So.2d 362 (1969). The plaintiffs in this case now claim that these same transactions, if carried into execution, will violate their federal constitutional rights to due process of law under the Fourteenth Amendment and the guarantee of a re-publican form of government under Article IV, Section 4 of the United States Constitution. For the reasons to be discussed below, we find no merit to these federal claims, and accordingly deny the petition for a preliminary and permanent injunction.[2]

The case arose as follows. In 1966 the Louisiana Legislature adopted Act 556, proposing an amendment to Article XIV of the Constitution of the State of Louisiana by adding Section 47 thereto. The text of the proposed constitutional amendment was published by the Secretary of State of the State of Louisiana in one newspaper in each parish of the state, twice during the period, not less than thirty and not more than sixty days before the date of the general election on Tuesday, November 8, 1966. (See Article XXI, Section 1 of the Louisiana Constitution of 1921.) This amendment, which appeared as Proposition Number 10 on the ballot used at the election on November 8, 1966, was overwhelmingly adopted by the people of Louisiana.[3]

In accordance with the terms of the amendment as approved by the people, it created the Louisiana Stadium and Exposition District which was authorized to plan, finance, construct and operate a domed stadium in the Metropolitan New Orleans area. Among the actions taken by the District were the following:

(a) Imposition of a Hotel Occupancy Tax, which is now in force and effect, and which is providing operating funds for the District.[4]

(b) Authorization of issuance of 93.5 million dollars of bonds to finance the project. The bonds would be payable solely from the avails of the Hotel Occu-

---

1. The specific details of the transactions in question appear later in this opinion.

2. At trial, all parties stipulated that the motion for a preliminary injunction and hearing on the merits were combined.

3. For: 425,272—Against: 135,564. The promulgation of this vote was made in accordance with the laws of the State of Louisiana on November 28, 1966.

4. The ordinance imposing the tax was authorized by Article XIV, Section 47(M) of the Louisiana Constitution of 1921 and was adopted by the District on June 27, 1967.

pancy Tax and the revenues derived from ownership of the stadium.[5]

(c) The District, by contract with the State of Louisiana, leased its land and facilities to the state.[6]

(d) The District, by contract with the State of Louisiana, agreed to manage and operate the facilities for the state.[7]

An action was brought in a Louisiana state court to determine the validity of the various acts and contractual commitments undertaken by the District. The Supreme Court of Louisiana held that all the transactions executed to effectuate the planning, financing, construction and operation of the domed stadium were specifically authorized by the Louisiana Constitutional Amendment. *Arata, supra.* The *Arata* case is now on appeal to the Supreme Court of the United States, sub nom. Schwegmann v. Louisiana Stadium and Exposition District, No. 748.

The instant case was filed on October 31, 1969, seeking injunctive relief as follows:

(a) that the decision of the Supreme Court of Louisiana be nullified to the extent that it holds the "full faith and credit" of the State of Louisiana is pledged to secure the issuance of bonds by the District.

(b) that the lease agreement between the District and Louisiana insofar as this lease attempts to be used to secure the credit of Louisiana be enjoined.

(c) that acquisition of lands by the District prior to the issuance of the bonds be deemed null and void and violative of the United States Constitution, Amendment XIV, Section 1.

(d) that the Court declare that paragraph (P) of Article XIV, Section 47, Louisiana Constitution of 1921 prohibits the District from using its revenues for the acquisition of lands prior to the issuance of bonds and that such an attempt to so use the District's revenues prior to issuance of the bonds also violates the United States Constitution, Amendment XIV, Section 1.

(e) that the Court enjoin all of the defendants from entering into any and all acts pursuant to Louisiana Constitution of 1921, Article XIV, Section 47, which in any way seek or attempt to commit and obligate the "faith and credit" of Louisiana in connection with the issuance of bonds for the development and construction of a domed stadium.

(f) that any attempted use of the "faith and credit" of the State of Louisiana to sell bonds to finance the acquisition of the site and the construction of the project as defined in the lease between Louisiana and the District be declared null and void.

(g) that the defendants be enjoined from entering into all transactions in excess of 35 million dollars in order to finance the stadium.

Defendants, on the other hand, contend that plaintiff has not presented a substantial federal question, that the validity of the actions complained of has been upheld in proceedings in the state courts, that the constitutional amendment was presented and voted on in compliance with the laws of the State of Louisiana and the United States of America and that all actions taken by the defendants to implement the amendment are legal and in compliance with the Constitutions of the State of Louisiana and the United States of America.

Federal jurisdiction was alleged to be based upon a violation of the Due Process Clause of the Fourteenth Amendment and the Guarantee Clause of the United States Constitution, Article IV, Section 4. We have considered all of the conten-

---

5. See Resolution of the District adopted February 21, 1969, under the authority of Article XIV, Section 47(F) of the Louisiana Constitution of 1921.

6. See lease agreement dated February 1, 1969, between the District and the State of Louisiana authorized by Article XIV, Section 47(D) of the Louisiana Constitution of 1921.

7. See Management and Operating Agreement between the District and the State of Louisiana dated February 1, 1969, authorized by Article XIV, Section 47(F) of the Louisiana Constitution of 1921.

tions underlying plaintiffs' request for relief and, for reasons discussed below, find none of them violative of the Due Process Clause of the Fourteenth Amendment or the Guarantee Clause of Article IV, Section 4 of the Federal Constitution.

A single judge signed a temporary restraining order [8] prohibiting the Louisiana Stadium and Exposition District and the Board of Commissioners thereof, from spending any funds for the acquisition of lands for a domed stadium facility.

Plaintiffs filed an amended complaint on November 13, 1969, adding John J. McKeithen, Governor of the State of Louisiana, W. W. McDougall, Commissioner of Administration for the State of Louisiana, Mrs. Mary Evelyn Parker, Treasurer of the State of Louisiana, and the Louisiana State Bond Commission as parties defendant. On December 5, 1969, Mrs. Martha G. Robinson, a voter-taxpayer, was allowed to intervene as a party plaintiff.

█ Plaintiffs and defendants jointly moved for the convening of a three-judge court to hear this case, pursuant to 28 U.S.C. §§ 2281 [9] and 2284 and such court was designated in due course. Although this case does not involve an attack upon the constitutionality of the state constitutional amendment itself, it does involve an attack upon the constitutionality of the application, execution and operation of a state constitutional amendment and the arrangements thereunder, previously described. Therefore, we find that this case is properly before a three-judge district court.

This case was tried on December 16, 1969. Plaintiffs produced five witnesses. The witnesses were various persons connected with the project, and the general thrust of their testimony was that the cost of the project would be well in excess of the 30–35 million dollar figure which certain newspaper articles, published prior to the passage of the amendment, had estimated the cost would be. The intervenor, Mrs. Martha Robinson, testified that she had voted for the amendment with the understanding that it prohibited the full faith and credit of the state from being put behind any bonds issued by the District. Defendants produced no witnesses.

The plaintiffs also submitted various exhibits; the defendants stipulated the authenticity of these exhibits but lodged a blanket objection to their relevancy. We reserved a ruling on the admissibility [10] of the documents and testimony, and allowed all of them to be filed in the record. They consisted of a series of newspaper articles published prior to the passage of the amendment which stated that the full faith and credit of the state would not be placed behind the bonds. Some of the articles also estimated the cost of the project at about 35 million dollars. Plaintiffs further submitted the affidavits of 21 voter-taxpayers to the effect that prior to the election they had been subjected to an extensive publicity

8. Subsequently, the temporary restraining order expired. A pre-trial conference was held before the duly constituted three-judge court, and after hearing the arguments of counsel on the question of damages, the Court renewed the restraining order pending consideration of the motion for preliminary injunction and set bond at $150,000.00. The plaintiffs were unable to furnish the necessary security, and the restraining order has therefore expired.

9. 28 U.S.C. § 2281 provides: "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

10. Considering all of the circumstances in this case, we have decided to overrule the defendants' objection and admit into evidence all of the documents and testimony offered by the plaintiffs and have duly considered all of the evidence.

campaign which represented that the full faith and credit of the state would not be placed behind any bonds issued in connection with the stadium and that the cost would not exceed 35 million dollars; that they had voted for the amendment believing the above facts and therefore were misled and deprived of a meaningful vote; and that since the present lease agreement, and cost in excess of 35 million dollars, violates the understanding of the voters who voted for the amendment, they were deprived of due process of law under the Federal Constitution.

As pointed out before, the Supreme Court of Louisiana, in *Arata, supra*, considered all of the transactions executed to effectuate the planning, financing, construction and operation of the domed stadium, and specifically held that they were authorized by the Louisiana Constitutional Amendment. Though the plaintiffs assert various federal claims (which we will consider hereafter), as this Court

now understands it, the plaintiffs seem to be attacking the validity of these transactions under the Louisiana Constitution, or perhaps even the decision itself of the Supreme Court of Louisiana, which upholds these transactions under the Louisiana Constitution.[11] In either case, plaintiffs are essentially asking this Court to relitigate state law issues, which have been decided by the Supreme Court of Louisiana.

■ The validity of a particular transaction under a state statute or constitution is, of course, simply a question of declaring the meaning of state law, and presents no federal question.[12] The plaintiffs have not cited, and we have not found, a single authority for the proposition that an alleged incorrect interpretation of the meaning of state law by a state court presents a federal question. If that were true, the federal courts would have jurisdiction of all cases of

11. The plaintiffs in *Arata* argued that the lease of the stadium to the State of Louisiana, and the pledge of the rentals to the payment of the bonds, was an attempt to secure the bonds with the full faith and credit of the state in direct violation of paragraph (S) of the constitutional amendment which states that "No bond issued under this amendment shall be secured by the faith and credit of the State." The Supreme Court held, however, that paragraph (E) of the amendment explicitly authorized the state's leasing of the facilities, paragraph (S) to the contrary notwithstanding. Paragraph (E) of the amendment provides: "Any other provisions of the Constitution and laws of the State to the contrary notwithstanding and without compliance with any other constitutional or statutory provisions relative to leasing of public facilities the State of Louisiana or any of its various agencies, or any political subdivision thereof, or any combination of the foregoing *shall have the right and authority to lease the* aforesaid *facilities of the District* or any portion thereof *and provide for the payment of the consideration therefor through the appropriation of funds* or otherwise. *The obligations of the lessee or lessees under any such lease shall constitute a charge against the revenues of such lessee or lessees* to the extent and in the manner agreed upon by the parties thereto. In

the event the State of Louisiana or any of its various agencies or any political subdivision thereof or any combination of the foregoing shall lease all or any portion of the aforesaid facilities of the District, then such entities shall have the right to sublease to any person or corporation, public or private, all or any portion *of the facilities so leased upon* such terms and conditions as they may determine." (Emphasis added.)

12. Speaking of Supreme Court review of state court decisions, Justice Jackson said: "This Court from the time of its foundation has adhered to the principle that it will not review judgments of state courts that rest on adequate and independent state grounds [authorities omitted]. The reason is so obvious that it has rarely been thought to warrant statement. It is found in the partitioning of power between the state and federal judicial systems and in the limitations of our own jurisdiction. Our only power over state judgments is to correct them to the extent that they incorrectly adjudge federal rights." Herb v. Pitcairn, 324 U.S. 117, 125, 65 S.Ct. 459, 463, 89 L.Ed. 789 (1944). See also Wright, Federal Courts, 426, "[The Supreme Court] has considered that state courts speak with final authority on state law," and the cases cited therein.

statutory construction arising under state law, and there would be no such case that would not present a federal question.

But plaintiffs further argue that the Louisiana Supreme Court's interpretation of its own Constitution deprives the voters of due process of law, and the guarantee of a republican form of government, under the Federal Constitution, apparently because that court's interpretation of the Louisiana Constitution is different than that of certain voters, who say they were "deceived" by certain publicity statements made by newspapers and others prior to the election. Assuming that the 21 deponents who filed affidavits in this case were "deceived" in voting for the amendment, the question remains: *How* were they deceived?

The parties stipulated that the lawful procedure for publicizing the text of the amendment prior to the election was followed: the text of the proposed amendment was published by the Secretary of State in one newspaper in each parish of the state, twice during the period not less than thirty and not more than sixty days before the general election, Tuesday, November 8, 1966. See Hotard v. City of New Orleans, 213 La. 843, 35 So.2d 752 (1948); Kohler v. Tugwell, 292 F.Supp. 978 (E.D.La.1968). The plaintiffs conceded in open court that they questioned neither the procedure by which the amendment was adopted nor the constitutionality of the amendment itself. If, then, the attack is not directed to the procedure in adopting the amendment, nor the constitutionality of the amendment itself, a process of elimination indicates that what is attacked is the *interpretation of the meaning of the amendment* by the Louisiana Supreme Court. Plaintiffs' claim, then, boils down to this: the Louisiana Supreme Court's interpretation of the meaning of the amendment differs from that of the plaintiffs' interpretation in this case; the will of the people has been thwarted by the decision of the Supreme Court of Louisiana, and they have therefore been deprived of their federal constitutional right to due process of law. Thus, the plaintiffs would have this Court, in the name of the Constitution of the United States, strike down a state court's interpretation of the meaning of its own Constitution, because plaintiffs and 21 deponents state that they disagree with that interpretation. The proposition we must thus decide is who is the authoritative voice in Louisiana in declaring the meaning of the state's law. Obviously, it is the Louisiana Supreme Court. We do not understand the other issues plaintiffs are attempting to raise. To repeat, plaintiffs have neither attacked the procedure by which the amendment was adopted (as unfair or illegal), nor the constitutionality of the amendment itself.

■ The problem presented by this case is not a federal constitutional one. It is not for this Court to inquire into the wisdom or feasibility of the domed stadium project. Nor do we inquire into the interpretation of the Louisiana Constitutional Amendment involved since that has been fully passed on by the Louisiana Supreme Court which speaks with final authority on matters of Louisiana state law. In the area in which we are involved, namely federal constitutional law, we find no support to plaintiffs' contentions, nor have we been cited any argument or authority which would afford relief to plaintiffs.

The petition for a preliminary and permanent injunction is denied, and plaintiffs' suit is dismissed at their cost.