John Henry KNAPP, Arizona State Prison Inmate No. 33659, and all inmates of the Arizona State Prison similarly situated, Petitioners-Appellants,

v.

Harold CARDWELL, et al., Respondents-Appellees.

No. 80-5419.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1981.

Decided Jan. 19, 1982.

John Foreman, Deputy Public Defender, Phoenix, Ariz., for Ceja, Knapp.

Donald S. Klein, Tucson, Ariz., for Ortiz, Jeffers.

Allen G. Minker, Tucson, Ariz., for Richmond, Blazak.

Robert C. Brown, Casa Grande, Ariz., for Greenawalt.

Robert B. Norgren, Tucson, Ariz., for Steelman.

John P. Frank, Phoenix, Ariz., argued; NAACP Legal Defense Fund, etc. Michael Cooper, Jose A. Cardenas, Phoenix, Ariz., on brief, for amicus curiae.

William J. Schaffer, III, Chief Counsel, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellees.

Before MERRILL, ADAMS *, and SNEED, Circuit Judges.

SNEED, Circuit Judge:

Appellants are a class of Arizona prisoners sentenced to death. They attack their death sentences on the ground that the Arizona law under which they were sentenced, as interpreted by the Arizona Supreme Court, is unconstitutional. They further claim that even if it is constitutional, its application to them violates the ex post facto and double jeopardy clauses of the Constitution, and that their constitutional rights to speedy sentences were violated. The district court rejected these contentions and upheld the death sentences. We affirm.

* Honorable Arlin M. Adams, United States Circuit Judge for the Third Circuit, sitting by designation.

## I.
## FACTS AND BACKGROUND

In 1973 the Arizona legislature adopted alternative penalties for first degree murder of death or life imprisonment without possibility of parole for 25 years. Ariz.Rev. Stat. § 13-454 (1978) (current version at Ariz.Rev.Stat. § 13-703). The enactment required the judge to hold a presentence hearing at which he would hear evidence of aggravating and mitigating circumstances. After considering the evidence presented at the presentence hearing, and weighing it together with evidence relevant to aggravation or mitigation introduced at trial, the judge was required to make a finding as to the existence or non-existence of each aggravating and mitigating circumstance listed in the statute. In order to impose the death penalty, the judge was required to find the existence of one or more of the aggravating circumstances listed in the statute and "that there are no mitigating circumstances sufficiently substantial to call for leniency." Ariz.Rev.Stat. § 13-454(D) (1978) (current version at Ariz.Rev. Stat. § 13-703(E)).

In upholding section 13-454 against a challenge for vagueness, the Arizona Supreme Court in 1976 interpreted the list of mitigating factors in that section to be exclusive. *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). This restrictive interpretation was reaffirmed on March 1, 1978, in *State v. Bishop*, 118 Ariz. 263, 576 P.2d 122 (1978), *sentence vacated sub nom. Bishop v. Arizona*, 439 U.S. 810, 99 S.Ct. 69, 58 L.Ed.2d 103 (1978) (death sentence vacated and remanded for reconsideration in light of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)), *sentence reinstated, State v. Bishop*, 127 Ariz. 531, 622 P.2d 478 (1980).

On April 21, 1978, two death-row inmates petitioned the district court for writs of habeas corpus, alleging the unconstitutionality of section 13-454 as interpreted in

*State v. Richmond* and *State v. Bishop.* The district court enjoined the state from putting the two petitioners to death, concluding that the failure of section 13–454, as interpreted, to permit consideration of all relevant mitigating circumstances violated petitioners' rights under the Eighth and Fourteenth Amendments of the United States Constitution. *Richmond v. Cardwell,* 450 F.Supp. 519 (D.Ariz.1978).

On May 2, 1978, the Arizona Supreme Court directed the execution of John Henry Knapp. Knapp immediately instituted the present action in district court, alleging that the court's reasoning in *Richmond v. Cardwell* was applicable to all inmates on Arizona's death row. The district court, on May 12, 1978, enjoined the state from imposing the death penalty on any state prisoners. On July 3, 1978, the United States Supreme Court found an Ohio death penalty statute unconstitutional because it limited consideration of mitigating factors to those enumerated in the statute and thereby potentially excluded consideration of relevant mitigating factors. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *see also Bell v. Ohio,* 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978).

The Arizona Supreme Court reacted to the *Lockett* decision by deciding in *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), that section 13–454 was unconstitutional insofar as it limited the right of the defendant to show additional mitigating circumstances. 120 Ariz. at 445, 586 P.2d at 1257. The *Watson* court then reasoned that the offending portion was "severable" and could be "deleted," and proceeded to do so, stating that if the state legislature had been aware of the constitutional problems, it would have permitted consideration of all mitigating factors.[1]

The result of *Watson* was to change the Arizona procedure for imposing the death penalty to require that the judge hear and consider evidence relevant to *any* mitigating circumstances and otherwise to leave the procedure intact.

On May 1, 1979, the Arizona legislature adopted the present version of Ariz.Rev. Stat. § 13–703 which, in essence, codified the result reached in *Watson.*[2]

## II.

### DISTRICT COURT DECISION

In July 1979 the district court in this case ordered that there be no executions in Arizona until the state moved to dissolve the May 12, 1978, injunction barring executions. The state made such a motion on January 9, 1980, on the basis that the inmates had been or would be sentenced under a procedure that permits consideration of all mitigating circumstances. The district court, on April 18, 1980, vacated its original injunction and then reimposed a stay of all executions pending appeal to this court. *Knapp v. Cardwell,* 513 F.Supp. 4 (D.Ariz.1980). In a thorough and well-reasoned opinion, the court held that the post-*Watson* version of section 13–454 was neither void for vagueness nor violative of the Eighth and Fourteenth Amendments. The court also noted its limited power to review state court interpretations of state statutes, and held that in any event the Arizona Supreme Court's interpretation of the statute in *Watson* was reasonable. The district court went on to reject the prisoners' claims that the application of *Watson* to them violated the double jeopardy and ex post facto clauses of the Constitution, and held that it was not appropriate to consider the prisoners' claims of violation of their right to speedy sentencing in a class action. We agree with the district court.

---

1. The court remanded the case for resentencing. In a supplemental opinion denying a petition for rehearing, the court held that the remand did not violate the double jeopardy or ex post facto clauses of the United States and Arizona Constitutions. *State v. Watson,* 120 Ariz. at 451–54, 586 P.2d at 1263–66 (1978). The Arizona Supreme Court later set Watson's death sentence aside, partly based on mitigating circumstances that developed after his prior death sentence was rendered. *State v. Watson,* 129 Ariz. 60, 628 P.2d 943 (1981).

2. Neither the validity of section 13–703, nor the sentences of those sentenced pursuant to it, is at issue in this case.

## III.

## ISSUES ON APPEAL

Appellants[3] vigorously attack the decision of the district court. They assert both that the result in *State v. Watson* renders section 13–454 void for vagueness, and that the procedure used by the court to reach its result usurped the powers of the Arizona Legislature and thus violated the Fourteenth Amendment and the guarantee clause of the United States Constitution. They next urge that even if the *Watson* court reached a permissible result, its application to them violates the double jeopardy and ex post facto clauses of the Constitution. Finally, they continue to insist that delays in imposing sentence on them have violated their Sixth Amendment right to speedy sentencing. We shall address each of these issues.

## IV.

## THE VAGUENESS ISSUE

The Arizona Supreme Court in *Watson* maintained that it was "severing" the un-

**3.** The class of appellants as of the time of filing this appeal appeared to fall into twelve categories in terms of the timing of the various events surrounding their death sentences. [See chart on page ——.]

### CATEGORIES OF APPELLANTS

| Category | Number of Appellants | TIME | | | | | |
|---|---|---|---|---|---|---|---|
| | | (Before 4/21/78) | 4/21/78 Richmond v. Cardwell | 7/13/78 Lockett v. Ohio | 7/20/78 State v. Watson (Watson II) | 5/1/79 Amendment to Ariz. Rev. Stat. § 13-703 |
| 1 | 6 | c-t-s | | | | rs | |
| 2 | 7 | c-t-s | | | | | rs |
| 3 | 1 | c-t-s | | | | rs | (rs2) |
| 4 | 3 | c-t-s | | | | | (rs) |
| 5 | 2 | c | t | | | s | |
| 6 | 1 | c | | | | t-s | |
| 7 | 3 | | | | | c-t-s | |
| 8 | 1 | c | | | | | t-s |
| 9 | 3 | | | | | c | t-s |
| 10 | 2 | c-t-s | | | | | (rt) |
| 11 | 1 | c-t-s | | | | rs | (rt) |
| 12 | 2 | c | | | | t-s | (rt) |

```
c = crime
t = trial
s = sentence
rs = resentence (first sentence vacated)
rs2 = second resentence (first resentence vacated)
rt = retrial (conviction and sentence vacated)
() = pending at time appeal was filed
```

constitutional from the constitutional portions of Ariz.Rev.Stat. § 13–454. *State v. Watson*, 120 Ariz. at 445, 586 P.2d at 1257. Appellant prisoners argue that by claiming to have effected a severance, the *Watson* court must have deleted all of subsection F, the subsection that lists the mitigating factors. It follows, they argue, that the remainder of the statute is left with meaningless internal references to a non-existent subsection F and thus is void for vagueness. Alternatively, appellants contend that the deletion of subsection F leaves the statute without any authorization for consideration of mitigating factors, with the consequence that it violates the Eighth and Fourteenth Amendments.

The district court held that *Watson* merely reinterpreted section 13–454 to allow consideration of any mitigating factors, and did not "sever" any particular language. *Knapp v. Cardwell*, 513 F.Supp. at 11. While the use of the word "severance" is troublesome, the unmistakable effect of the *Watson* decision as a whole is to reinterpret the statute to allow any mitigating factor to be considered.

The intent of the *Watson* court is clear. The court did not state that subsection F in its entirety was unconstitutional. It merely invalidated a prior interpretation of that provision "*insofar as it limits* the right of the defendant to show additional circumstances." *State v. Watson*, 120 Ariz. at 445, 586 P.2d at 1257 (emphasis added). The failure of the court explicitly to overrule *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), the case in which the Arizona Supreme Court held the list of mitigating factors to be exclusive, is not determinative. The intent and effect of the *Watson* decision are clear.

We agree with the district court that the substance of *Watson* was merely the elimination of the restriction on cognizable mitigating circumstances engrafted onto the statute by *State v. Richmond*. This constitutes a reinterpretation, and it has long been within the prerogative of the highest state court to interpret, or reinterpret, state statutes. *See Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Garner v. Louisiana*, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); *Smiley v. Kansas*, 196 U.S. 447, 455, 25 S.Ct. 289, 290, 49 L.Ed. 546 (1905).

That the Arizona Supreme Court did not intend to delete the entire subsection F from the statute is further supported by its opinions written after *Watson* wherein the court specifically cites to subsection F. *See State v. Jordan*, 126 Ariz. 283, 614 P.2d 825, *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *State v. Steelman*, 126 Ariz. 19, 612 P.2d 475, *cert. denied*, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980); *State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979). In the *Jordan* and *Steelman* cases, the court actually quoted language from subsection F.

■ Since we have found that subsection F was not deleted from Ariz.Rev.Stat. § 13–454 by the Arizona Supreme Court in *Watson*, we hold that the post-*Watson* version of the statute is not void for vagueness. We further hold that the post-*Watson* version of section 13–454 allows consideration of all mitigating factors and thus does not violate the Eighth and Fourteenth Amendments.

## V.

### THE USURPATION ISSUE

Appellant prisoners argue that, even assuming the Arizona Supreme Court intended in *Watson* to accomplish what we have found they did, the effect of the decision constitutes judicial legislation to create criminal penalties in violation of the Fourteenth Amendment due process clause and the Article IV, section 4, guarantee of a republican form of government for the states. We do not agree.

To support their argument, appellants employ alternative approaches. They assert, first, that in light of the legislative history and wording of Ariz.Rev.Stat. § 13–454, there is no permissible way to interpret it to allow a court to consider all mitigating circumstances, and therefore only a legisla-

tive amendment could cure it. In the alternative, appellants posit that even if the Arizona Supreme Court could have reached its interpretation of section 13–454 by some permissible means, it instead attempted to achieve that end by a "severance," which in this case requires the addition of language to the statute, and that can be done only by the legislature. In either case, appellants claim that the Arizona Supreme Court's attempt in *Watson* to conform section 13–454 to constitutional requirements usurped the function of the state legislature and was thus invalid.

### A. The State Court's Interpretation Is Not Within the Scope of Federal Review

 Normally the construction of a state statute by the highest court of that state must be treated as if it had been incorporated into the words of the statute. *Poulos v. New Hampshire*, 345 U.S. 395, 402, 73 S.Ct. 760, 764, 97 L.Ed. 1105 (1953). State courts have the final authority to interpret and, where they see fit, to reinterpret that state's legislation. *Garner v. Louisiana*, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). *See also, Wainwright v. Stone*, 414 U.S. 21, 22–23, 94 S.Ct. 190, 192–193, 38 L.Ed.2d 179 (1973); *N.A.A.C.P. v. Button*, 371 U.S. 415, 432 (1963); *Winters v. New York*, 333 U.S. 507, 514, 68 S.Ct. 665, 669, 92 L.Ed. 840 (1948).

 The Supreme Court has established that courts should construe legislation in a constitutional manner "if fairly possible," *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973), and that state courts can use statutory interpretation to validate otherwise questionable death penalty statutes. *See Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); also see discussion in *Knapp v. Cardwell*, 513 F.Supp. at

11 n.12. Federal courts will not review a state supreme court's interpretation of its own statute unless that interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11, 95 S.Ct. 1881, 1885 n.11, 44 L.Ed.2d 508 (1975); *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 129, 65 S.Ct. 1475, 1480, 89 L.Ed. 2092 (1945); *Ward v. Love County*, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1920); *Terre Haute & I. R. Co. v. Indiana*, 194 U.S. 579, 24 S.Ct. 767, 48 L.Ed. 1124 (1904).

### B. The Arizona Supreme Court's Interpretation of the Statute in Watson is not Untenable

Appellants argue that review is necessary and proper here because the Arizona Supreme Court's interpretation of section 13–454 is clearly incompatible with the language of section 13–454 and its legislative history.

 We agree with the district court that the *Watson* construction of the statute is not untenable. *Knapp v. Cardwell*, 513 F.Supp. at 12–13. The only positive command of section 13–454(F) is that the court shall consider the mitigating factors listed there. Its language nowhere dictates that the court shall consider no other mitigating factors, nor does the language of subsection D preclude use of unlisted factors in deciding whether any mitigating circumstances are "sufficiently substantial to call for leniency." Ariz.Rev.Stat. § 13–454(D).[4] Moreover, the fact that a bill introduced in the House of Representatives of Arizona, containing an explicit provision for open mitigation, was defeated in favor of a Senate bill containing no such explicit language on open mitigation, does not compel a finding that the legislature intended the list of mitigating factors to be exclusive. See dis-

---

4. Both Texas and Florida had death penalty statutes that were unclear as to whether the listed mitigating circumstances were exclusive, and both statutes were upheld by the Supreme Court after the highest state courts had inter-

preted the ambiguity in favor of non-exclusivity. *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

cussion in *Knapp v. Cardwell*, 513 F.Supp. at 12–13 n.15.

### C. The Arizona Supreme Court in Watson was not Legislating

■ We agree with the district court that the Arizona Supreme Court in *Watson* was merely reinterpreting Ariz.Rev.Stat. § 13–454. Arizona law adjures that statutes should be construed to effect their objects, and that interpretations that imperil the constitutionality of statutes be avoided when reasonably possible. Ariz. Rev.Stat. §§ 1–211, *et. seq.*[5] The court in *Watson* was being guided by this precept. The language of the statute remained precisely what it had been since it was first enacted. If anything was "severed" by *Watson*, it was the gloss imparted to the statute (erroneously we now know) by *Richmond.* We see no difference between such a "severance" in correction of earlier judicial error and an overruling or reinterpretation.

We also agree with the district court that the *Watson* result was not precluded by the *Watson* court's refusal to repudiate *State v. Richmond.* See discussion in 513 F.Supp. at 13–14. No matter how the court may have characterized it, what it did in *Watson* was to undo what it had done earlier in *Richmond.*

Our conclusion regarding the *Watson* interpretation of section 13–454 means that the Arizona Supreme Court did not impose a penalty unauthorized by the legislature in violation of the Eighth and Fourteenth Amendments. At all relevant times, Arizona had on its books a statute that clearly authorized death as a punishment for the crimes each of the appellants committed. The United States Supreme Court's decision in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which declared unconstitutional an Ohio death penalty statute that expressly limited the mitigating factors the sentencing court could consider, did not render the Arizona death penalty a nullity. It merely made sentences rendered under its then current construction unenforceable. *See In re Graham*, 138 U.S. 461, 11 S.Ct. 363, 34 L.Ed. 1051 (1891). This left it open to the Arizona Supreme Court to reinterpret section 13–454 to conform to the constitutional mandate or to adhere to its original interpretation and invoke the provision for a life sentence. *See Garner v. Louisiana*, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). It chose to reinterpret section 13–454. The Constitution does not preclude that choice. *See Smiley v. Kansas*, 196 U.S. 447, 455, 25 S.Ct. 289, 290, 49 L.Ed. 546 (1904).[6]

The choice made by the Arizona Supreme Court between competing interpretations of the statute was not a legislative act. Unlike legislative choice, the selection by a court between competing interpretations is circumscribed by legislative intent which, while not known precisely with respect to all possible issues, does eliminate a wide range of choices that would otherwise be available. Moreover, judicial choice can only exist as the result of a highly structured adversarial process instituted not by judges but by the adversaries themselves. And most importantly, the court's choice of competing interpretations, in the absence of constitutional constraints, can be overturned by the legislature. These differences justify our rejection of the charge of usurpation, and so it follows that we also must reject the related due process and guarantee clause arguments.[7]

---

**5.** Quoted in footnote 16 of the opinion below. *Knapp v. Cardwell*, 513 F.Supp. at 13 n.16.

**6.** Appellants do not complain of irregularities in the proceedings in the Arizona Court; they merely object to its choice of alternatives. *See Watermeier v. Louisiana Stadium and Exposition District*, 308 F.Supp. 273, 277–78 (E.D.La. 1969), *aff'd mem.*, 398 U.S. 955, 90 S.Ct. 2172, 26 L.Ed.2d 539 (1970). Further support for the rejection of appellants' argument is found in *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), where a similar claim under the ex post facto clause was rejected.

**7.** In view of our conclusion that the Arizona Supreme Court was not legislating in *Watson*, we need not reach the question of whether the United States Constitution requires separation of powers in state government.

## VI.

## THE EX POST FACTO ISSUE

■ It has been said that the ex post facto clause prohibits:

> any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law *at the time when the act was committed.* . . .

*Beazell v. Ohio*, 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (emphasis added). Although the ex post facto prohibition, United States Constitution, art. I, § 10, cl. 1, literally applies only to legislative acts, the Supreme Court has incorporated the principle upon which the prohibition rests into the due process clauses of the Fifth and Fourteenth Amendments. *See Marks v. United States*, 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977); *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

■ The first of appellant's two ex post facto arguments is that, because section 13–454 as interpreted in *Richmond v. Cardwell*, 450 F.Supp. 519 (D.Ariz.1978) was unconstitutional (per *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)), Arizona had no death penalty prior to *Watson*. *Watson*, therefore, was a judicial enlargement of the punishment for appellants' crimes committed before that decision in violation of the ex post facto clause.

We agree with the district court that *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), requires rejection of this argument. Dobbert committed his crime when Florida had an applicable death penalty statute of a type later declared unconstitutional in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Prior to Dobbert's trial, Florida passed a new death penalty statute to conform to the new constitutional requirements as defined in *Furman v. Georgia*. Dobbert was tried and sentenced under the new statute, which was found constitutional in *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

Dobbert argued that, because the type of Florida death statute in effect when he committed his crime was later found to be unconstitutional, Florida had no valid death penalty at the time of his crime. Therefore, his trial and sentencing under the new law resulted in an ex post facto enlargement of the penalty for his crime subsequent to the time of its commission. The Supreme Court in *Dobbert* rejected the notion that constitutional invalidation of the former Florida death penalty statute rendered it a nullity. 432 U.S. at 297, 97 S.Ct. at 2300. *See Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940). Instead, the Court found that the statute was an "operative fact" that gave defendant fair notice of the penalty—death—that Florida would seek to exact for his crime. *Dobbert v. Florida*, 432 U.S. at 298, 97 S.Ct. at 2300. This notice provided compliance with the ex post facto provision of the United States Constitution. 432 U.S. at 298, 97 S.Ct. at 2300. The Arizona law prior to *Watson* here performed the same function. *See State v. Smith*, 125 Ariz. 412, 610 P.2d 46 (1980).[8]

■ Some of the appellants attempt to distinguish *Dobbert* on the ground that Dobbert was tried and sentenced under a constitutional death penalty statute, whereas they were originally tried and sentenced before *Watson*. The *Dobbert* opinion makes it clear that this is a distinction without ex post facto implications. The Supreme Court in *Dobbert* held that the new Florida statute was not an ex post facto law both because it was procedural and because it was ameliorative. 432 U.S.

---

8. Since none of appellants were convicted of a murder occurring between the dates of the district court's decision in *Richmond v. Cardwell* and the Arizona court's decision in *Watson*, the question whether the *Richmond v. Cardwell* pronouncement, that section 13–454 as interpreted was unconstitutional, prevented that statute from serving as an "operative fact" in terms of *Dobbert* is not presented.

at 294, 97 S.Ct. at 2298. That is, it "neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict." 432 U.S. at 293, 97 S.Ct. at 2298. The "change" in the Arizona statute as a result of the interpretation by *Watson* is likewise both procedural and ameliorative. Its only effect was to enlarge the ability of defendants to introduce mitigating circumstances at sentencing. Thus, no ex post facto problems arise even with respect to those appellants tried and sentenced before *Watson*.

■ Appellants next argue that the invalidation of the previous Arizona sentencing procedure by *Watson* resulted in the acquisition of a fully matured right in each to receive a life sentence under Section 10, Chapter 138 of the 1973 Arizona Session Laws. This section provides that if the death penalty is held unconstitutional on final appeal, persons previously sentenced to death will receive a life sentence with no possibility of parole for 25 years. It follows, appellants insist, that to subject them to a more severe sentence than life imprisonment is an enlargement of the penalty contrary to the ex post facto prohibition of the Constitution.

We do not agree. Our deference to Arizona's interpretation of its own laws requires this result. Questions of when and how section 10 takes effect pertain to Arizona law, and have been resolved adversely to appellants by the courts of that state. Section 10 provides for the imposition of a life sentence "[i]n the event the death penalty is held unconstitutional on final appeal." 1973 Ariz.Sess. Laws § 10, ch. 138. The *Watson* court held that section 10 was intended to apply only if the death penalty itself was found unconstitutional. 120 Ariz. at 441, 586 P.2d at 1265. An invalidation of sentencing procedures would not make section 10 operative. Therefore, appellants never received a life sentence under Arizona law. We are not empowered to provide such a sentence. Appellants have been, and continue to be, under sentence of death.

## VII.

### THE DOUBLE JEOPARDY ISSUE

■ Appellants who were tried and sentenced to death prior to the decision in *Watson* claim that their resentencing under *Watson* violates the double jeopardy clause of the Fifth Amendment. We do not agree.

■ The double jeopardy clause does not prohibit resentencing. Nor does it absolutely prevent an increase in the original sentence on retrial following a reversal of a conviction. *North Carolina v. Pearce*, 395 U.S. 711, 719–21, 89 S.Ct. 2072, 2077–78, 23 L.Ed.2d 656 (1969). Double jeopardy, of course, does require that upon resentencing credit be given for punishment already endured under the first sentence. 395 U.S. at 718–19, 89 S.Ct. at 2077–78. However, to receive such credit the original punishment must have commenced. *Suggs v. Wilson*, 403 F.2d 52 (9th Cir. 1968). See the discussion at 513 F.Supp. at 14 n.17.

Inasmuch as none of the appellants can claim to have actually begun serving a death sentence, they once more argue that between sentencing and resentencing, their death penalties were reduced to life imprisonment. The argument proceeds as before: Upon the rendition of the Supreme Court's decision in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), or, at the latest, of the *Watson* decision, they acquired a fully matured right to a life sentence under 1973 Ariz.Sess. Laws § 10, ch. 138. Service of that sentence commenced immediately. Because no credit can be given for this service when a death penalty is imposed, the imposition of the death penalty constitutes a second punishment for a single crime, which is proscribed by the Fifth Amendment guarantee against double jeopardy.

This argument fails as before. Appellants did not acquire a right to a life sentence. We agree with the district court's view that deference to Arizona's interpretation of its own laws requires that the life-sentence provision of section 10 be treated as activated only upon invalidation of the death penalty itself. *See Watson*, 120 Ariz. at 453, 586 P.2d at 1265.

■ Appellants also argue that, regardless of section 10, there exists a common-law doctrine that automatically reduces a death sentence to life imprisonment immediately upon invalidation of the state's death penalty law. We agree with the district court that the California cases cited by appellants do not establish such a doctrine, and that no such doctrine exists.[9]

■ Because the *Watson* court did not find the death penalty as such unconstitutional, appellants occupy a position identical to that of any convicted criminal who has had a sentence vacated for procedural irregularities. They are entitled to resentencing under correct procedures, no more and no less. Nor can resentencing of the appellants here result in a more severe sentence than already has been imposed. To impose the same sentence following vacation of the original sentence for procedural error does not encounter the barrier of double jeopardy.

Next, appellants invoke *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), in arguing that the *Watson* resentencing procedures are defective. They insist that their first sentencing constituted an implicit acquittal of each aggravating circumstance found not to exist in that proceeding, and that *Bullington* prevents a contrary finding on resentencing. We do not agree.[10]

*Bullington* is distinguishable. There the petitioner, Bullington, was convicted of murder and sentenced to *life imprisonment* rather than death under a Missouri death penalty statute providing for a separate penalty phase of the trial before the judge and jury to determine which of the two authorized punishments, death or life imprisonment, should be applied. At the penalty phase under Missouri procedure, the jury hears opening and closing arguments of counsel, evidence of statutory aggravating circumstances, evidence of mitigating circumstances, and instructions from the judge. To impose the death penalty, the jury must find unanimously beyond a reasonable doubt that at least one of the statutory aggravating circumstances exists, must set forth and list the aggravating circumstances it finds, and find that the aggravating circumstances found are sufficient to warrant the imposition of the death penalty. The jury must also determine that the aggravating circumstances are not outweighed by any mitigating circumstances. Its findings are binding upon the trial court judge. The *Bullington* Court found this procedure so like a trial on guilt that the rendition of a life sentence was a finding that the government had failed to prove its case for the imposition of the death penalty. Therefore, at Bullington's retrial the

9. In *People v. Harvey*, 76 Cal.App.3d 441, 142 Cal.Rptr. 887 (1978), and *People v. Payne*, 75 Cal.App.3d 601, 142 Cal.Rptr. 320 (1977), California courts of appeals interpreted a California Supreme Court decision, *Rockwell v. Superior Court of Ventura County*, 18 Cal.3d 420, 134 Cal.Rptr. 650, 556 P.2d 1101 (1976), as mandating a reduction of the appellants' death sentences to life imprisonment. These cases are distinguishable. *Rockwell* held the death penalty portion of the California statute unconstitutional, and, unlike the Arizona Supreme Court in *Watson*, held that it could not be saved by statutory interpretations. The Arizona and California courts were each exercising the prerogative to interpret their own state's statutes. The fact that they came to different conclusions as to the constitutionality of different statutes raises no federal constitutional question.

10. Because appellants were sentenced to death, they do not here claim acquittal of the death penalty but of all those aggravating factors not

found in their first sentencing proceeding. Such a claim appears to be one of "collateral estoppel." Were we to accept their argument it would be equally appropriate to estop appellants from denying at resentencing the aggravating factors found to exist in their first proceeding or claiming enumerated mitigating factors not found there. Such holdings would undercut the ability of the court on resentencing to sentence the man before it rather than the man at the time of the first sentencing. *See Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion). Indeed, in response to the claim of one of the appellants here, the Arizona Supreme Court held that it was error not to reconsider the evidence of aggravating circumstances as well as that of mitigating circumstances at the resentencing hearing. *State v. Bishop*, 127 Ariz. 531 at 533, 622 P.2d 478 at 481 (1980) (the error was held to be harmless on the facts in the case).

government could not again seek the death penalty.

The *Bullington* Court indicated no intention to overrule those cases that permit harsher resentencing where the first sentence was rendered under a more flexible scheme involving discretionary balancing of circumstances by the sentencing body. Further, the *Bullington* Court did not address the issue of the manner in which individual aggravating circumstances should be treated on resentencing *when the original sentence imposed the death penalty.*

The present case is clearly distinguishable from *Bullington*. First, appellants in this case, unlike Bullington, were sentenced to death at their original sentencing. There exists no implied "acquittal" in the case. *See Bullington,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (Justice Powell, dissenting). The sentence that can be imposed on resentencing here cannot be more severe than that previously assessed. Fundamentally, the *Watson* procedures are, using Chief Justice Burger's words from *Dobbert v. Florida, supra,* 432 U.S. at 304, 97 S.Ct. at 2303 (Burger, C. J., concurring), "if anything, more favorable to the petitioner" than those it replaced. In addition, the Arizona sentencing procedure, both before and after *Watson,* bears less resemblance to a trial than did that of Missouri. For example, the Arizona sentencing decision is made by the judge rather than the jury, and the procedure for presenting the evidence in Arizona is much less trial-like. These differences lend weight to our holding that in this case no implied acquittals have been shown to exist.

 At the resentencing hearing of at least one of the appellants, evidence of aggravating circumstances was introduced that had not been introduced at the first sentencing hearing. *State v. Valencia,* 124 Ariz. 139, 602 P.2d 807 (1979) (evidence that appellant was convicted of another crime after the first hearing). In light of our finding that the *Watson* change in interpretation of section 13–454 is procedural and ameliorative, and in light of our finding

that *Bullington* is distinguishable, we hold that this does not constitute double jeopardy. A resentencing hearing at which any evidence of both aggravating and mitigating circumstances is received does not violate appellants' constitutional rights, even if the evidence developed or was discovered after the original sentencing hearing or was not introduced there for some other reason.

## VIII.

### SPEEDY SENTENCING

 We agree with the district court that appellants' speedy sentencing arguments are not appropriately considered in a class action, and we express no opinion on the merits of any individual speedy sentencing claims.

AFFIRMED.

ADAMS, Circuit Judge, Sitting by Designation, concurring in part and dissenting in part.

I join with the majority in all respects but one, namely, the validity of the resentencing procedures which permit the new sentence to rest on findings of aggravating circumstances that were found, in the first sentencing proceeding, not to be present in the crime. The majority asserts that reconsideration of any such circumstances would not constitute double jeopardy. Guided by the interpretation of the double jeopardy clause recently advanced by the United States Supreme Court in *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), I would permit reconsideration only of a narrower class of such aggravating circumstances—those that do not rest on evidence similar in nature to that supporting a conviction or acquittal of a crime. Because the record does not make clear whether on resentencing a death sentence had been imposed on any of the defendants in reliance on what I would consider an impermissible new finding of an aggravating circumstance, I would remand to the district court for such a determination.

Although it addresses a different factual situation, *Bullington v. Missouri* is, as the majority recognizes, relevant to the problem we face here. In *Bullington*, the defendant had been convicted of first-degree murder and sentenced to life imprisonment, but a new trial was granted because of constitutionally defective jury selection. At the second trial, Bullington was again convicted. At his second sentencing proceeding, the prosecution again sought the imposition of the death penalty, even though the sentencing jury at the first sentencing proceeding had not found the aggravating and mitigating circumstances to warrant a sentence of death. The Supreme Court of Missouri ruled that the prosecution could seek the death penalty the second time, and Bullington appealed.

In reviewing the Missouri Supreme Court ruling, the United States Supreme Court reaffirmed its earlier holdings that resentencing within the limits existing at the time of the first sentence generally does not implicate the double jeopardy clause. *Id.* 451 U.S. at 446, 101 S.Ct. at 1862, 68 L.Ed.2d at 278. *See, e.g., United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). And the Court reaffirmed *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), where the imposition of a death sentence on resentencing following an initial life sentence was held not to violate the double jeopardy clause. But the Supreme Court in *Bullington* distinguished those earlier cases, and other similar cases, on the ground that they had addressed situations in which the sentencing was essentially discretionary, so that a lesser sentence could not be construed as an acquittal of any factual charge. The *Bullington* majority considered the features of the Missouri death sentencing procedure to be significantly different from the normal sentencing procedure [1] and inferred from those special features that a sentencing jury's imposition of a life sentence rather than a death sentence was in effect a finding that the State had failed to establish beyond a reasonable doubt its case that the death penalty was warranted. Because the Supreme Court considered that determination to be the functional equivalent of an acquittal of criminal charges, it held that the Missouri Supreme Court, by exposing Bullington to the risk of a death sentence in the second hearing after the State had failed to prove its case in the first hearing, had contravened the double jeopardy clause. 451 U.S. at 437–51, 101 S.Ct. at 1857–64, 68 L.Ed.2d at 278–84.[2]

The defendants in the present case each received a death sentence at the first hearing; unlike Bullington, they were not exposed to the possibility of a harsher sentence at the second hearing. However, the majority would permit some of the defendants here to be subjected at their second sentencing procedure to reconsideration of all explicit findings originally made in their favor, even though, if all mitigating circumstances had properly been considered the first time, those findings might have resulted in a life sentence rather than death at the first hearing. Although, because of the narrowness of its holding, *Bullington* may be of uncertain application outside the facts

---

1. In particular, the Supreme Court noted that under the Missouri arrangement the sentence was imposed by a jury that was confined to two choices—life imprisonment or death—and was guided in its choice by articulated standards. The Court emphasized that the jury could not impose the harsher penalty unless the prosecution met "the burden of establishing certain facts beyond a reasonable doubt," and observed that the structure of the hearing strongly resembled that of a trial. 451 U.S. at 438 & n.10, 101 S.Ct. at 1857–58 & n.10, 68 L.Ed.2d at 278–79 & n.10.

2. The four dissenting Justices in *Bullington* agreed that the crucial question for double jeopardy purposes was whether the sentencing determination was sufficiently akin to an acquittal. However, the dissenters contended that a life sentence in the Missouri proceeding did not constitute an implicit acquittal of any charge, and would have held the double jeopardy clause inapplicable because resentencing did not expose the defendant to a renewed "possibility of error as to guilt or innocence." 451 U.S. at 451, 101 S.Ct. at 1864–65, 68 L.Ed.2d at 285–87 (Powell, J., dissenting).

of its specific environment (a sentence of life at the first hearing, followed by the possibility of a death sentence at the second hearing), the reasoning of that case would appear incompatible with the majority's holding here, even though the defendants here were not exposed to the risk of harsher sentences at the second hearing than they actually received at the first.

Indeed, in some ways the double jeopardy question in the present situation may even be *less* troublesome than that confronted in *Bullington*. The Supreme Court there appeared to be concerned with ascertaining the extent to which the life sentence constituted an acquittal of factual allegations rather than an exercise of discretion. The Court placed great emphasis on the trial-like nature of the Missouri death sentencing procedure precisely because that similarity supported the inference that a life sentence arising out of the proceeding was in effect an acquittal of the factual predicate for a death sentence 451 U.S. at 437–51, 101 S.Ct. at 1857–64, 68 L.Ed.2d at 278–84. *See* Comment, *The Supreme Court Term, 1980*, 95 Harv.L.Rev. 91, 118 (1981). Here we are not confronted with the task of uncovering the precise predicate of a sentence; rather, in the present situation we have explicit factual findings of the sentencing judge at the initial hearing as to the existence or nonexistence of each enumerated aggravating circumstance. *See* Ariz.Rev.Stat. § 13–454(C), amended and recodified at § 13–703(D).[3] Some of these findings, such as those going to heinousness, pecuniary motive, or risk of death, would normally rest on evidence similar in nature to that supporting a conviction or acquittal on guilt. If the life sentence in *Bullington* constituted, for purposes of double jeopardy, an "acquittal" of aggravating circumstances that would be necessary to sustain a death sentence, it is difficult to suggest—as does the majority—that an explicit finding at a sentencing hearing as to the nonexistence of an aggravating circumstance, when that finding rests on evidence similar to that which would be adduced at trial, is not an "acquittal" of that aggravation, and of any death sentence based even in part on that aggravation.

Following a finding, resting on factual evidence presented at a sentencing hearing, that an aggravating circumstance did not exist, the reasoning in *Bullington* would appear to militate against permitting the prosecution a second chance to prove that the aggravating circumstance did exist and justified the imposition of the death penalty. This would most clearly be so where the State wished to establish at the second hearing the existence of an aggravating circumstance that took place *before* the initial sentencing hearing, but that the State, for whatever reason, had failed to establish

**3.** Section 454(C) provided:

The Court shall return a special verdict setting forth its findings as to the existence or nonexistence of each of the circumstances set forth in subsection E and as to the existence or nonexistence of each of the circumstances in subsection F.

To decide that these findings, in effect, constitute acquittals, therefore, we would not be limited to the inferences one could draw from any similarity between the Arizona sentencing procedure and a trial. The explicitly factual nature of the findings present much stronger evidence of their import than does the inferential evidence on which the *Bullington* court was required to rely. Nevertheless, the Arizona death sentencing scheme is quite similar to the Missouri procedure in the respects emphasized in *Bullington*. Although in Arizona the sentence is rendered by a judge rather than a jury, the judge is limited in a number of crucial respects. In particular, the sentencing judge may find an aggravating circumstance to be present only if the circumstance has been shown beyond reasonable doubt to have existed. *State v. Jordan*, 126 Ariz. 283, 614 P.2d 825 (1980). The judge imposes the sentence only after a hearing at which evidence may be submitted by both the prosecution and the defense, and "the admissibility of information relevant to any of the aggravating circumstances ... shall be governed by the rules governing the admission of evidence at criminal trial." Ariz.Rev.Stat. § 13–902(C). Although we do not face here a challenge to a death sentence imposed in place of an initial life sentence, it would appear that in such a case a life sentence imposed under the Arizona procedure, like a life sentence imposed under the Missouri scheme, might well constitute an implicit acquittal of the requisites for a death sentence even in the absence of the express factual findings involved in this case.

initially. For example, in the case of appellant Jordan, the aggravating circumstances that had justified the initial imposition of the death sentence had consisted solely of several prior convictions. On resentencing, the judge also found that the specific crime for which he was being sentenced had been heinous and for pecuniary gain.[4] But if the State wished to introduce sufficient evidence to establish that, say, "The defendant committed the offense in an especially heinous, cruel, or depraved manner," Ariz.Rev. Stat. § 13–902(E)(6), it had at the first sentencing hearing its "one fair opportunity to offer whatever proof it could assemble," *Bullington v. Missouri*, 451 U.S. at 446, 101 S.Ct. at 1862, 68 L.Ed.2d at 283; *Burke v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978); *Bullington* would appear to hold that "the State is not entitled to another." 451 U.S. at 446, 101 S.Ct. at 1862, 68 L.Ed.2d at 283. A new opportunity to show the existence of that aggravating circumstance would provide the same sort of repeated attempt to convict that the Supreme Court in *United States v. DiFrancesco*, 449 U.S. 117, 136, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980), observed to be absent in the ordinary resentencing situation.[5]

It is not clear from the record, especially because at the time of argument resentencing of some of the appellants had apparently not been completed, whether any appellants have been sentenced to death on the basis of a finding of a new aggravating circumstance resting on factual evidence that could have been adduced at the first trial, or whether any appellants are currently defending allegations of such aggra-

vating circumstances in the course of ongoing resentencing proceedings. It does appear that at least one appellant, Valencia, has been sentenced to death on the basis, in part, of a separate conviction that was rendered subsequent to the initial sentencing hearing. *State v. Valencia*, 124 Ariz. 139, 602 P.2d 807 (1979). This sort of aggravating circumstance, however, presents a significantly different question from that posed by most of the aggravating circumstances under the Arizona statute.

One crucial distinction is that, in a case such as Valencia's, the new finding of an aggravating circumstance is based on an event occurring after the initial sentencing hearing. *North Carolina v. Pearce* would suggest that, at least in an ordinary sentencing proceeding (*i.e.*, one not involving capital punishment), this new conviction could be considered by the judge on resentencing because it took place after the first sentencing proceeding. *See* 395 U.S. at 726, 89 S.Ct. at 2081. On the other hand, it appears that *Bullington* might foreclose a prosecutor in Missouri from seeking a death sentence on resentencing, even if a separate conviction had been rendered in the interim, once the initial sentencing jury had sentenced the defendant to life imprisonment. But neither *Pearce* nor *Bullington* provides clear guidance in a case such as Valencia's, where consideration of a conviction—previously found by the sentencing judge not to exist—cannot lead to a sentence harsher than that meted out initially. In the absence of such guidance, I would rely, as did the dissenting Justices in *Bullington*, on the general concerns underlying the double jeopardy clause—specifically, the concern

---

4. In affirming Jordan's sentence, the Arizona Supreme Court disregarded the additional findings of aggravating circumstances, noting that no mitigating circumstances had been found and that the presence of at least one aggravating circumstance other than those newly found was sufficient under the statute to call for imposition of the death penalty. *State v. Jordan*, 126 Ariz. 283, 614 P.2d 825 (1980).

5. The majority suggests that such a bar would constitute "collateral estoppel," and that if invoked must, under the concept of mutuality, bind the defendant as well as the prosecution

to any unfavorable factual findings that were not tainted by the defects requiring resentencing. At 1264 n.10. But the concept of mutuality would not appear to apply in this sort of "collateral estoppel." This is so because double jeopardy is a constitutional doctrine that provides the defendant with protections not afforded the prosecution—one of the ways in which "[i]n the administration of criminal justice, our society imposes almost the entire risk of error upon itself," *Addington v. Texas*, 441 U.S. 418, 423–24, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979).

that relitigation of factual issues may impose an unwarranted burden on the defendant and increase the risk of an erroneous finding of guilt. *See* 451 U.S. at 451–52, 101 S.Ct. at 1864–65, 68 L.Ed.2d at 586–87 (Powell, J., dissenting).

This concern illuminates a second, and more fundamental distinction in sentencing proceedings between the aggravating circumstance of intervening criminal convictions and other sorts of aggravating circumstances. In the situation before us, it does not appear that consideration of intervening criminal convictions increases the chance of erroneous findings. Introduction of intervening convictions at resentencing does not afford the prosecution with more than one opportunity to introduce such evidence, nor does it require the defendant to litigate an issue which he legitimately could have considered to be closed. Moreover, a sentencing judge's initial finding that the defendant has not been convicted of another felony—unlike a finding with respect to other sorts of aggravating circumstances—bears little resemblance to an acquittal. A finding with respect to heinousness, for example, would normally require consideration of a number of factual matters that would have to be inferred from the record or from testimony. Disproving a charge of heinousness might prove difficult and onerous for a defendant, just as disproving guilt at trial would be. But a finding as to a prior conviction is different in nature from a finding as to heinousness: a prior conviction is generally a matter of public record, and usually requires little factual inquiry.

Under the standards set out in *Bullington,* I do not believe that a finding as to the non-existence of other convictions can be deemed an acquittal, at least with respect to other convictions rendered after the initial sentencing hearing but before resentencing. I am persuaded, however, that findings as to other sorts of aggravating circumstances, with factual predicates that are not a matter of official public record, do constitute "acquittals" for double jeopardy purposes. Because it appears possible that some of the appellants may have been sentenced in reliance on, or may now be forced to defend against, new findings of aggravating circumstances of the latter type, I would remand to the district court the cases of those appellants who have been resentenced subsequent to *Watson* for a determination whether the procedures by which they have been or are being resentenced violate the double jeopardy clause.